UNITED STATES of America,
Plaintiff–Appellant,

v.

Anthony ACCETTURO,
Defendant–Appellee.

No. 87–5045.

United States Court of Appeals,
Eleventh Circuit.

Oct. 25, 1988.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Lothar R. Genge, Sp. Atty., U.S. Dept. of Justice, Ft. Lauderdale Field Office, Ft. Lauderdale, Fla., Deborah Watson, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Donald I. Bierman, Bierman, Shohat & Loewy, P.A., Ira N. Loewy, Miami, Fla., for defendant-appellee.

Before RONEY, Chief Judge, and ANDERSON, Circuit Judge, and ALLGOOD *, Senior District Judge.

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

ANDERSON, Circuit Judge:

This is an appeal by the government from the dismissal of Count I of a two-count indictment on income tax evasion, on the basis of prosecutorial misconduct. The indictment charged that defendant-appellee Anthony Accetturo filed false income tax returns for the tax years 1975 (Count I of the indictment) and 1976 (Count II of the indictment). It was handed down April 15, 1983, one day before the statute of limitations would have run. The district court ruled that the timing of the government's advice to Accetturo's attorney and tax preparer (i.e., advice that the attorney himself was also a target of the grand jury investigation), coupled with the government's failure to grant a tax conference requested by Accetturo's attorney, constituted prosecutorial misconduct and caused prejudice to Accetturo sufficient to warrant dismissal of Count I of the indictment. We reverse.

## I. BACKGROUND

At the time of his indictment in April of 1983, Accetturo had been under grand jury investigation for income tax liability related to returns filed for the tax years 1975 through 1978. Accetturo had filed "Fifth Amendment" returns for those years, i.e., returns which stated his net income from "sources legal and illegal" without further elaboration on the sources of income and deductions.

In June of 1981 the grand jury subpoenaed Accetturo's attorney to give testimony and produce documents related to his preparation of these Fifth Amendment returns. The attorney was subpoenaed again in August of 1982 regarding Fifth Amendment returns he prepared for several of Accetturo's associates. On both occasions, the government advised the attorney that he himself was not a target of the grand jury's investigation.

When the attorney was subpoenaed in June of 1981, he requested a tax conference to discuss the Accetturo investigation with the Internal Revenue Service and with the Tax Division of the Department of Justice. He repeated the request in August of 1982. The government acknowledged both requests, and indicated that it would notify the attorney if and when such a conference became appropriate.

On or about March 23, 1983, the government informed the attorney that he was now considered a target of the grand jury investigation, and discussed with him the possibility of cooperating and becoming a witness. The government attributed this change in status to its accumulation of information concerning the attorney's preparation of Accetturo's tax returns and similar returns for others, and also to its recent receipt of information from the Internal Revenue Service related to Accetturo's tax returns for the tax years 1975 and 1976 (i.e., information that Accetturo had failed to report income received from the sale of a crane and other property, hereinafter referred to as the "Burris Road transaction").[1] The government had evidence that the attorney prepared returns for Accetturo and others on which they disclosed only a figure for net income claiming that further disclosures would incriminate them, and that the attorney retained no working papers in connection with the preparation of the returns. The government had a reasonable suspicion that the attorney had engaged in the preparation of false returns. The magistrate found that the attorney had actually been a "target" of the Justice Department's Organized Crime Strike Force since August of 1982, following his second appearance before the grand jury, but that the government had delayed

---

1. Accetturo and an associate, John Wade Nelson, were joint owners of JWN Inc. Accetturo served as vice-president, and held a 50% stock option in the company. The government contends that when JWN, Inc. sold a crane, Accetturo diverted the proceeds of the sale to a dummy corporation, Rainbow Properties, set up for the sole purpose of receiving these funds. These funds were later transferred to a trust fund for Accetturo's parents, of which Accetturo and his brother, Rocco Accetturo, were trustees. The government contends that Accetturo never reported this as income.

Accetturo claims that this transaction constituted a repayment of loans made by Accetturo and his relatives to help pay off JWN, Inc.'s rapidly mounting debts, and thus was nontaxable.

notifying him that he was a target from then until March 23, 1983.

On April 7, 1983, the attorney was subpoenaed by the grand jury to testify and present documents concerning his preparation of Accetturo's 1975 and 1976 returns. When questioned about these returns before the grand jury, the attorney invoked his Fifth Amendment privilege. The attorney later testified that had he not been targeted, he would have testified that the Burris Road transaction was a repayment of a loan to Accetturo and therefore a non-taxable event.

## II. TARGETING OF THE ATTORNEY AND PREJUDICE

The district court found that if the attorney's testimony were indeed exculpatory, the attorney would have been obliged to withdraw as Accetturo's counsel in order to serve as a witness. However, the district court found that, while the government did not act improperly in targeting the attorney, its delay in informing the attorney of his status (from August 1982 to March 1983) constituted misconduct and caused undue prejudice to his client Accetturo.

The district court held further that the government's refusal to grant Accetturo a requested tax conference, at which the attorney could have presented exculpatory evidence and opposing legal arguments, also formed the basis for its decision to dismiss one count of the indictment.

■ It is well settled that district courts may exercise their discretionary power to dismiss an indictment on grounds of prosecutorial misconduct where a sufficient showing of prejudice has been made. *E.g., United States v. Holloway*, 778 F.2d 653, 655 (11th Cir.1985). More recently,

this circuit has determined that "prejudice to the defendant is an essential element when a criminal defendant seeks dismissal of an indictment due to prosecutorial misconduct." *United States v. O'Keefe*, 825 F.2d 314 (11th Cir.1987). However, it is well established that "dismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized." *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir.1983), *quoting United States v. Owen*, 580 F.2d 365, 367 (9th Cir.1978).

Accetturo argued below that the government intentionally targeted his attorney to remove him as counsel and bar his exonerating testimony. Accetturo charged that these actions deprived him of the attorney's exculpatory testimony, which may have averted the indictment.

■ We agree with the district court that the government's targeting of Accetturo's attorney was warranted in this case. Our review of the record confirms that there was ample evidence to warrant the government's decision to target the attorney and investigate his possible complicity in the preparation of false returns.[2]

■ We cannot, however, agree with the district court's conclusion that the government's delay in targeting the attorney warranted dismissal of the indictment. Assuming *arguendo*, without deciding, that the government engaged in the prosecutorial misconduct by the virtue of delay in informing the attorney of his status as a target, Accetturo has nevertheless not shown sufficient prejudice to warrant dismissal.

There is no reason to assume that the attorney would have been more willing to testify before the grand jury had he known

2. *Compare United States v. Heller*, 830 F.2d 150 (11th Cir.1987). Heller, a defendant in a criminal tax case, established that the government's unwarranted threat to prosecute his accountant deprived Heller of an important defense witness. An Internal Revenue Service agent threatened criminal charges against Heller's accountant. Immediately afterwards, the accountant's lawyer called the agent to say that the accountant wanted to be a witness and not a defendant. The accountant later testified falsely against

Heller. However, the record in *Heller* clearly indicated that the government had no interest in prosecuting Heller's accountant. Rather, it was clear that the threat to prosecute the accountant was unwarranted. Whereas in *Heller* the government had no legitimate suspicion of wrongdoing by the accountant, the government in this case had reasonable justification for targeting the attorney, and its actions cannot be deemed to be an unwarranted denial of a witness for the defense.

for a longer time that he was a target. The attorney, citing his experience as a former IRS Special Agent and Assistant U.S. Attorney, testified that his only choice as a target was to assert his Fifth Amendment privilege. The only reasonable assumption is that once informed of his status as a target he would take the same action he did, namely, decline to testify invoking the Fifth Amendment. Under these circumstances, the attorney's testimony would have been unavailable as soon as he learned he was a target, regardless of whether he had been told in August of 1982 or March of 1983. Hence, the delay clearly could not have prejudiced Accetturo with respect to the timing of the attorney's targeting. In other words, it was the fact that the attorney was targeted, and not the timing thereof, that caused harm to Accetturo. The fact of the targeting was amply justified; thus, there was no harm from any improper act of the government.

Accetturo cites further prejudice from the delay in that he did not have time to procure the assistance of substitute counsel before the attorney's grand jury appearance or before his indictment. As the attorney himself testified before the district court, the attorney was ethically obligated to withdraw as Accetturo's counsel if his exculpatory testimony was necessary to Accetturo's defense. As a former Assistant U.S. Attorney, the potential for conflict should have been apparent to the attorney even before he was informed of his status as a target of the grand jury investigation. No prejudice can be attributed to the government due to the attorney's failure to properly anticipate the potential conflict of interest. Moreover, Accetturo himself did not testify before the grand jury.

Accetturo can point to no evidence that was lost to him because of the government's delay in advising the attorney that he was a target.[3] At oral argument, Accetturo's counsel could point to no evidence in the record that Accetturo was prejudiced by not having adequate representation during the relevant grand jury proceedings. We are not inclined to speculate or presume prejudice where none has been demonstrated.

## III. TAX CONFERENCE

■ Accetturo also argues that he was prejudiced by the government's unreasonable refusal to afford him a tax conference with the tax division of the Justice Department. Assuming *arguendo*, but expressly not deciding, that the government's refusal to grant a tax conference might in some circumstances violate a taxpayer's rights and constitute prejudice,[4] Accetturo has failed to establish prejudice in this case. Accetturo has produced little or no evidence, aside from the attorney's testimony, to support his exculpatory story. A Justice Department tax attorney testified that chances for receiving a tax conference are deemed to be good at the pre-grand jury stage, but might not be under extraordinary or exceptional circumstances, e.g., during a grand jury investigation or when an investigation is under intense time pressure. Accetturo argues that the government denied its request in bad faith, since the tax conference provided the only means by which he could exonerate himself once the attorney had been targeted and removed as a witness. As noted above, the documentary evidence the attorney submitted when subpoenaed before the grand jury was not presented in a form recognizable as exculpatory. A Justice Department tax attorney testified that adequate documentation of defense arguments would be

---

**3.** Accetturo argues that he lost the favorable testimony of the attorney, but our discussion in the text above makes it clear that the attorney's testimony was lost because of the fact that he was targeted, not because of the delay in targeting him.

**4.** Since we rule that Accetturo was not unduly prejudiced by the denial of a tax conference, we decline to decide whether or not Justice Department policy mandated such a conference.

However, we doubt seriously that Accetturo had a "right" to such a conference. A Justice Department tax attorney testified that tax conferences with the Department's tax division are discretionary with the Department. He also stated that the Department's policy, as presented in the U.S. Attorney's manual, was explicitly described as mere guidelines conferring no rights on persons.

crucial, since it would have to be weighed against existing evidence from a grand jury investigation or in an IRS special agent's report.

## IV.  CONCLUSION

We conclude that the defendant has not made a sufficient showing of prejudice to warrant dismissal of the indictment.  We therefore reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.