**UNITED STATES of America**

v.

**John WHITE, Defendant.**

**No. 91 CR. 214 (KC).**

United States District Court,
S.D. New York.

July 19, 1991.

Richard Signorelli, Asst. U.S. Atty., U.S. Atty.'s Office, New York City, for plaintiff.

Michael Milner, Burnstein & Milner, New York City, for defendant.

**ORDER**

CONBOY, District Judge:

The indictment charges the defendant with conspiracy to sell more than 100

grams of heroin and selling heroin on four separate occasions during the summer of 1986.

The Court has before it a number of motions filed by the defendant a) to dismiss the indictment because the prosecution is based upon prosecutorial vindictiveness b) to preclude the Government from introducing at trial evidence pursuant to Rule 404(b) and Rule 609(b) of the Federal Rules of Evidence c) to require the Government to produce one Harry Smith for an interview with defendant's counsel and d) to require the Government to furnish defendant with certain particulars about the charges in the indictment.

As we have indicated, the charges in this case deal with facts and events that occurred in 1986.

On or about June 2, 1986, a narcotics investigation of Harry Smith ("Smith") and his sources of supply was approved by the Acting Chief of Narcotics for the United States Attorney's Office for the Southern District of New York ("the Office"). After this approval was obtained, the Office was not involved in the investigation, arrests, and prosecution of the defendant and Smith later that summer and fall. The case was handled and supervised by the Office of Prosecution, Special Narcotics Courts of the State of New York, shortly after the first undercover meeting on June 2, 1986. Until late 1990, no criminal case had been opened or even considered by the Office against White for the offenses arising out of the 1986 conspiracy. (Aff. ¶ 2.) *

After an investigation by the Drug Enforcement Administration ("DEA") during the summer of 1986 the defendant and Smith were arrested on September 4, 1986 by the DEA and charged in a New York State criminal complaint with having violated P.L. 220.21, Criminal Possession of a Controlled Substance in the First Degree. The defendant's Mercedes Benz car was seized by the DEA under federal forfeiture law and was subsequently administratively forfeited when the defendant did not respond to the notice of forfeiture. (Aff. ¶ 3.).

By late 1986 or early 1987, the charge in the criminal complaint against the defendant was dismissed by New York State. According to the Assistant District Attorney in charge of the case at the time, the charge was probably dismissed due to lack of admissible evidence under state law. There is no indication in the records of the state prosecutor or of the state court files that the dismissal of the criminal complaint charge was with prejudice. Regardless, the defendant was not subsequently charged by the state by complaint or indictment. The Office was not involved in the state's decision to dismiss the charge against White and was not informed of this action. (Aff. ¶ 4.)

On or about September 10, 1986, Smith was indicted in eleven counts by a New York State grand jury and charged with criminal sale of a controlled substance in the first, second, and third degrees, and criminal possession of a controlled substance in the first and third degrees, in violation of P.L. §§ 220.43, 220.41, 220.39, 220.21 and 220.16. Smith subsequently pleaded guilty in New York Supreme Court to criminal sale of a controlled substance in the second degree in violation of P.L. § 220.41 and received a sentence of three years to life. The Office was not involved in the prosecution or sentencing of Smith. (Aff. ¶ 5.)

In September 1988, the defendant initiated a lawsuit against the United States in United States Claims Court in Washington, D.C. regarding the forfeiture of his car. He claimed that he had not received notice of forfeiture. This lawsuit was transferred to the United States District Court for the

---

* "Aff." refers to the affidavit dated July 9, 1991 of Richard E. Signorelli, Assistant United States Attorney for the Southern District of New York, made in support of the Government's Memorandum of Law in Opposition to the Motions. The facts asserted in this affidavit have not been challenged or controverted by the defendant in either his papers or in the oral argument of the motions, conducted on July 17, 1991.

Southern District of New York in March 1989. This civil action was assigned to an Assistant United States Attorney who only handles civil cases. This was the first time that the Office became involved in a case relating to White's involvement in the 1986 narcotics conspiracy. In part because the Government could not prove that it had sent proper notice to the defendant, the Honorable Michael B. Mukasey, directed the Government in or about May 1990 to commence a forfeiture action in district court. (Aff. ¶ 6).

In August 1990 the forfeiture case was then assigned to Assistant United States Attorney ("AUSA") Richard E. Signorelli, a member of the Criminal Division of the Office. After reviewing the case and making an independent determination that there was ample probable cause supporting the forfeiture of the car and that the Government should proceed with the forfeiture action, AUSA Signorelli filed, in December 1990, a verified complaint against the car pursuant to 21 U.S.C. § 881(a)(4) and (6). After receiving an extension from the Government, the defendant filed an answer to the complaint in January 1991. (Aff. ¶ 7).

On the basis of information obtained from a comprehensive review of the evidence in the forfeiture case, AUSA Signorelli also determined that there was probable cause to believe that the defendant had engaged in criminal conduct which had gone unprosecuted. Specifically, the admissible evidence in the case indicated that the defendant had in fact supplied Smith with the heroin which was sold to the undercover agent during the summer of 1986. (Aff. ¶ 8).

AUSA Signorelli reviewed the case in detail on several occasions with the Chief of Narcotics for the Office. He apprised her of all the relevant facts of the case. She subsequently approved the opening of a criminal case for the defendant's 1986 offenses and approved the presenting of the case to the grand jury. This was the only time that the Office had considered criminal charges against the defendant. (Aff. ¶ 9).

On March 14, 1991, the case was presented to the grand jury which returned a five-count indictment that day. The defendant was arrested on the indictment several days later. Immediately after his arrest, AUSA Signorelli notified the defendant's attorney in the forfeiture case, Stacy J. Haigney, that the defendant had been indicted and arrested. AUSA Signorelli requested a stay of the forfeiture action until the resolution of the criminal case. Such a stay was consented to by counsel and ordered by Judge Mukasey. The forfeiture action for the car, and for two properties owned by the defendant which were seized after the indictment pursuant to a verified complaint and filed as a related case, are currently in suspense and will be reactivated after the resolution of this criminal case. (Aff. ¶ 10–11).

Prior to the filing of the indictment, there were no discussions between anyone from the Office and counsel for the defendant, regarding the possible filing of criminal charges against the defendant. At no time, upon and after the filing of the indictment charging the defendant with his narcotics offenses, has anyone from the Office discussed with any of the defendant's criminal or civil attorneys the dropping or reducing of the criminal charges against the defendant in exchange for the dropping of the defendant's claim against the car. The forfeiture case, now in suspense, will proceed after the resolution of the criminal case. (Aff. ¶ 12).

The defendant asserts that only after he began his challenge to the forfeiture of his vehicle, did federal agents approach Smith to obtain his testimony against the defendant, a process leading to the filing of this indictment in this case. The defense argues that the aforementioned facts "form a *prima facie* basis for believing that the government had no intent to prosecute Mr. White for the crimes charged ... until he began his prolonged attempt to recover his vehicle." Defendant's Memorandum of Law dated July 3, 1991, P.3 ("Def.Mem.").

According to the defendant, the record demonstrates that "the Government's prime, if not sole, motive in bringing the instant charges is to retaliate against Mr. White for challenging the forfeiture of his vehicle and the statutory notice procedures." *Id.* This, the defendant argues, constitutes a vindictive prosecution, and requires dismissal of the indictment.

The defendant relies principally upon two decisions from the United States Supreme Court. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court set aside a heavier sentence imposed upon a defendant after he had successfully obtained a reversal of his first conviction. The only issue before the Court in *Pearce* concerned the constitutional limitations upon the imposition of a more severe punishment after conviction for the same offense upon retrial. The Court held that neither the double jeopardy provision nor the equal protection clause imposes an absolute bar to a more severe sentence upon reconviction, but that the due process clause could bar a harsher sentence if vindictiveness on the part of the sentencing judge played a role in the second, heavier sentence. Accordingly, the Court imposed an obligation upon sentencing judges, where imposing a greater sentence after retrial, to place on the record the objective, factual basis for doing so. In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court considered whether a defendant who was appealing a conviction for a misdemeanor in the North Carolina State Courts could be indicted for a felony in North Carolina based upon the same conduct. The Court held that the indictment on the felony charge contravened the due process clause, since a defendant convicted for a misdemeanor had a right under state law to a trial de novo without apprehension that the State would retaliate by substituting a more serious charge for the original one and thus subject him to a significantly increased potential period of incarceration. Finding no evidence in the record that the prosecutor acted in bad faith or maliciously in seeking the felony indictment against the defendant, the Court nonetheless concluded that "the opportunities for vindictiveness in this situation are such" as to require an extension of the rule in *Pearce* to the prosecutor in the case under review. 417 U.S. at 27, 94 S.Ct. at 2102.

Defendant also cites two Fifth Circuit cases, *United States v. Thomas*, 593 F.2d 615 (1979) and *Jackson v. Walker*, 585 F.2d 139 (1978), which are only two of a series of cases that radically extended the reach of *Blackledge* to new circumstances in the Fifth Circuit during the years 1977 and 1978. Both *Thomas* and *Jackson*, however, involved prosecutors who had re-indicted defendants who had successfully challenged all or part of the indictments brought against them by those prosecutors.

The case before us does not, upon the uncontroverted facts set forth in the Signorelli affidavit, implicate a) an initial federal prosecutorial role in the formulation or disposition of defendant's state case or b) any attack by the defendant upon the prosecutorial role of state authorities in the favorable and voluntary disposition of his 1986 State case or c) any adverse act by the federal prosecutor in either the civil or criminal terms of this Court previous to filing of the instant indictment, other than his response to the civil action which the *defendant* brought *against* the Government, to recover an automobile which the Government asserts by way of defense in the civil action was used to transport heroin. Not unaware of the unprecedented, and indeed, anomalous position in which the defendant finds himself, he asks us to apply *Blackledge* to this case "to serve as an appropriate check on the Government's power to use the threat of criminal prosecution to compel un-indicted individuals to forego their civil remedies. Def.Mem., 8. We are also told that "the principles of *Blackledge* will help to ensure that forfeiture proceedings do not become insulated from review by the courts." *Id.* Our Circuit has pointed out, however, that the Supreme Court reviewed *Pearce* and

*Blackledge* in *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and limited them to their particular facts. *United States v. Hinton,* 703 F.2d 672, 678 (2d Cir.1983). In 1987, our Circuit observed that "since *Blackledge,* the Supreme Court has applied the presumption of prosecutorial vindictiveness only to situations in which a prosecutor lodges more severe charges following a defendant's post-conviction exercise of his right to appeal." *Lane v. Lord,* 815 F.2d 876, 878 (2d Cir.1987).

■ The defendant claims that the United States Attorney's Office's decision to charge him with narcotics offenses was taken in retaliation for his attempting to get his car back and, in so doing, exposing the inadequacy of the Government's forfeiture notice procedure. Tr. 25 **. But as the Government points out at page 7 of its Memorandum, a temporal or sequential nexus between the defendant's filing of his claim and the Government's decision to prosecute does not ipso facto establish any retaliatory motive, or indeed any presumption of vindictiveness. It is undisputed that the United States Attorney played no role in the State prosecution of White, or in the decision to investigate White specifically. It is also undisputed that the forfeiture case was reviewed in the criminal division only *after* Judge Mukasey urged the Government to give the defendant supplemental notice in the forfeiture case. Tr. 17, 21–22. That review, the *first* by the Office that addressed the adequacy of proof that the car had been utilized to transport heroin, lead to the forming of a professional judgment by the United States Attorney that the defendant had violated federal narcotics laws, that the statute of limitations had not run, and that a legal and moral duty required that the case be submitted to the grand jury. Tr. 18–19. Defendant's argument is, in substance, that he is entitled to immunity from prosecution for heroin trafficking because he chose to attack the Government's forfei-

ture procedures in a civil suit that *he* initiated. This is a manifestly untenable position, which we have no hesitation in rejecting. The mischief that such a ruling would introduce into enforcement of the narcotics laws is clear; the injustice that it would work in this case is plain.

As the defendant has not challenged the factual record established by the Government, and offers no relevant factual issue other than speculation over the prosecutor's motives, a hearing is not warranted. *United States v. Silvestri,* 719 F.2d 577, 583 (2d Cir.1983).

There has been no showing of actual vindictiveness, and these circumstances do not warrant a presumption of vindictiveness on the part of the Government. Accordingly, there has been no due process violation, and the defendant's motion to dismiss the indictment is denied.

■ With respect to the defendant's motion to require the Government to produce Harry Smith, White's alleged co-conspirator who is expected to testify for the Government at White's trial, the Government represents that it has communicated to Smith through Smith's attorney defense counsel's wish to speak with Smith about his testimony and role in the case, and it has advised Smith that he may speak with defense counsel and it is solely Smith's decision whether or not to so speak, and that the Government has given to White's counsel the name and telephone number of Smith's counsel. Under these circumstances, the Court declines to issue the order sought by counsel. *United States v. Roberts,* 388 F.2d 646 (2d Cir.1968), does not compel a different result.

■ The defense also asks the Court to direct the Government to produce to the defense all previous statements made to law enforcement authorities by Smith, pursuant to *Brady* and *Giglio.* The Government represents that it is unaware of the existence of any *Brady* material, and that

** "Tr __" references to transcript of the oral argument heard on the matter.

it will turn over any *Giglio* material the day before the trial is to begin. That is sufficient under the law.

The Government has advised the defendant that it intends to elicit testimony from Smith under Rule 404(b), regarding two drug transactions involving White in 1980 and 1982, and an unconsummated drug transaction between Smith and White in 1990. The defendant naturally objects. We preclude the Government from alluding in its opening to or offering any evidence of these transactions on its direct case. If this testimony is offered by the Government on its rebuttal case, the Court will assess its probative value and prejudicial impact, as well as its substantive admissibility, at that time.

■ We have reviewed the evidence concerning defendant's 1960 conviction for possession of a weapon and his 1970 conviction for wire fraud, and conclude, under Rule 609(b), that they are too remote and unrelated to the pending charges to have sufficient probative value to outweigh a substantial prejudicial effect.

Accordingly, the Government is precluded from referring to them in any way during the course of the trial.

We will rule on the admissibility of the Government's evidence of obstruction of justice in 1986 by White at the time that it is offered at trial.

The defendant's request for greater particulars, and all other relief, is denied.

SO ORDERED.