UNITED STATES of America, Appellee,

v.

John WHITE, Defendant–Appellant.

No. 1632, Docket 92–1072.

United States Court of Appeals,
Second Circuit.

Argued May 29, 1992.

Decided Aug. 3, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., for U.S. Richard E. Signorelli, Annmarie Levins, Asst. U.S. Attys., of counsel.

The Law Firm of Michael M. Milner, New York City, for John White, Michael M. Milner, Emily R. Daniel, Michele Stolls, of counsel.

Before: MINER, McLAUGHLIN, and RONEY*, Circuit Judges.

RONEY, Senior Circuit Judge:

John White was convicted of conspiracy to possess with intent to distribute heroin under 21 U.S.C. §§ 812, 841(a)(1), and 846. On appeal, White contends that the district court erred: in denying his motion to dismiss the indictment on the grounds of vindictive or selective prosecution, 768 F.Supp. 447; in denying his motion for a new trial based on newly discovered evidence that the Government's key witness perjured himself; and, in sentencing. We affirm.

White was arrested in September 1986 by Drug Enforcement Administration (DEA) agents on charges of possession with intent to distribute a controlled substance. The charges arose out of a narcotics investigation of Harry Smith. Although White was charged in state court, those charges were later dismissed.

The DEA seized White's vehicle at the time of his arrest. The federal authorities did not bring charges against him at that time. In 1987, White retained an attorney to assist in recovering his vehicle. In 1988, he brought an action in claims court to obtain the value of his vehicle. After the DEA notified White that they still had the vehicle, White brought an action in 1989 to set aside the forfeiture of his vehicle.

At a status conference, the district court indicated that the notice of forfeiture procedures the Government had used were unconstitutional. In 1990, the Government retracted its defense and commenced a new forfeiture action with new notice.

Apparently at some point after the status conference, the Government approached Smith about testifying against White in a federal prosecution for the narcotics charges. Smith agreed to cooperate. Assistant United States Attorney (AUSA) Signorelli, who also was handling White's forfeiture case, determined that there was probable cause to believe that in 1986 White had engaged in unprosecuted criminal conduct. In 1991, White was indicted by a federal grand jury on the present charges. After a jury trial, he was convicted and later sentenced.

*Vindictive or Selective Prosecution*

■ White sought a dismissal of the indictment on the ground that the prosecution was initiated in retaliation for his challenging the forfeiture of his vehicle. Although the decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, *Bordenkircher v.*

*Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978), the decision to prosecute violates due process when the prosecution is brought in retaliation for the defendant's exercise of his legal rights. *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); *United States v. Khan,* 787 F.2d 28, 31 (2d Cir. 1986). Although a vindictive motive is often difficult to prove, *see North Carolina v. Pearce,* 395 U.S. 711, 725 n. 20, 89 S.Ct. 2072, 2080 n. 20, 23 L.Ed.2d 656 (1969), one will be found where there is direct evidence of actual vindictiveness, or a rebuttable presumption of a vindictive motive may arise under certain circumstances. *United States v. Goodwin,* 457 U.S. 368, 373, 384 n. 19, 102 S.Ct. 2485, 2489, 2494 n. 19, 73 L.Ed.2d 74 (1982).

■ The district court correctly held that there is no basis for applying a rebuttable presumption of prosecutorial vindictiveness in this case. Such presumption stems from the decisions in *Pearce* and *Blackledge* where the Supreme Court was concerned with the danger that a prosecutor may be inclined to punish a defendant for obtaining a retrial by appeal. *United States v. Goodwin,* 457 U.S. 368, 377, 102 S.Ct. 2485, 2490, 73 L.Ed.2d 74 (1982).

White's case is similar to *Goodwin,* where the Court held that a pretrial decision to modify charges against a defendant, after the defendant decided not to plead guilty and go to trial, did not warrant a vindictiveness claim. 457 U.S. at 384, 102 S.Ct. at 2494. The Court recognized a pre-trial/post-trial dichotomy, stating that the "possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." *Id.*

This Circuit has limited the application of such a presumption to prosecutions brought after post-conviction activity of defendants. *See Lane v. Lord,* 815 F.2d 876, 878 (2d Cir.1987). We have held that a "presumption of prosecutorial vindictiveness does not exist in a pretrial setting."

*United States v. Hinton,* 703 F.2d 672, 678 (2d Cir.), *cert. denied,* 462 U.S. 1121, 103 S.Ct. 3091, 77 L.Ed.2d 1351 (1983). Application of a presumption of vindictiveness here would mean that the defendant's opposition to the Government's decision to seek forfeiture in any case could preclude the Government from bringing justifiable criminal charges. We refuse to so hold.

■ There being no presumption in favor of White which would shift the burden of proof to the Government, it is incumbent upon White to prove that the indictment was the product of vindictive retaliation or selective prosecution. Contrary to White's contention, there is insufficient evidence in the record to reverse the district court's finding that White was not charged with narcotics offenses in retaliation for attempting to get his car back.

White violated federal and state laws in selling illegal drugs. The state's 1986 decision not to prosecute White is unrelated to the federal Government's 1991 determination that there was probable cause to believe that White had committed narcotics offenses. Even though White can show that his forfeiture claim brought his unprosecuted activities to the prosecutor's attention, this showing does not establish vindictiveness. *Cf. Hinton,* 703 F.2d at 678–79. White's allegations that proof of vindictiveness may be found in alleged Government violations of its internal guidelines and alleged improper supervision of AUSA Signorelli are also insufficient. White has not come forward with proof of actual vindictiveness in the form of objective evidence that overcomes the presumption of legitimacy of the prosecutor's charging decision. *See Goodwin,* 457 U.S. at 384 n. 19, 102 S.Ct. at 2494 n. 19.

■ White likewise fails in his attempt to present a selective prosecution claim. To establish a *prima facie* case of selective prosecution, a defendant must establish

(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecu-

tion, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Moon,* 718 F.2d 1210, 1229 (2d Cir.1983) (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). White has not offered evidence to establish such a *prima facie* case.

■ Although White argues that an evidentiary hearing was required, he has placed no controlling facts in dispute to warrant a hearing. *See United States v. Silvestri,* 719 F.2d 577, 583 (2d Cir.1983); *United States v. Gilbert,* 668 F.2d 94, 97 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982).

### *Perjury*

White challenges the trial court's denial of his motion for a new trial based on the ground of newly discovered evidence: the supposed perjury of the Government's principal witness, Harry Smith, with respect to Smith's personal drug use. The motion was supported by two affidavits: one by White's attorney stating that he had attempted unsuccessfully to question Smith prior to trial, his motion to compel having been denied by the court; another by Glenn Mincey which simply stated that he was acquainted with Smith during the summers of 1990 and 1991 during which period he "observed Harry Smith using cocaine" at social gatherings. When questioned about his use of drugs after 1986, Smith had testified that in fact he had taken no drugs.

A motion for a new trial based on newly discovered evidence is granted only "if required in the interest of justice." Fed. R.Crim.P. 33. Several principles have been established for making this determination.

■ *First,* the motion will not be granted unless the "newly discovered evidence" could not with due diligence have been discovered before or during trial. *Sanders v. Sullivan,* 863 F.2d 218, 226 (2d Cir.1988);

*United States v. DiPaolo,* 835 F.2d 46, 49 (2d Cir.1987). Although the district court held that the defendant did not meet this requirement, we do not rest our decision on that ground. Because there was no evidentiary hearing, the record does not show the circumstances under which Mincey's affidavit was obtained. Since it is not the use of the drugs but the alleged denial of use that would make this evidence material, it is difficult to evaluate whether defense counsel could have, or should have, developed this point prior to Smith's testimony.

■ *Second,* when the newly discovered evidence focuses on the perjury of a witness, a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury. *DiPaolo,* 835 F.2d at 49–51. The district court observed the perjury was "by no means established or shown even to be likely." The Government argues that White failed to demonstrate that Smith in fact committed perjury, there being other evidence which contradicted Mincey's generalized accusation. We do not rest our decision on this point, however, the record being insufficient to establish that Mincey's affidavit is unworthy of belief. The district court assumed that Smith perjured himself with respect to his drug use. We will do the same.

■ *Third,* the newly discovered evidence must be material. *United States v. Wallach,* 935 F.2d 445, 456 (2d Cir.1991) ("[w]hether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict"); *cf. Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 355–57, 83 S.Ct. 448, 457–458, 9 L.Ed.2d 357 (1963). The credibility of a witness who testifies as to substantive facts is critical in the trial of a case. To this extent, it cannot be said that evidence that would show the witness to be lying is immaterial. Certainly if called at trial, Mincey would have been allowed to testify according to his affidavit, once Smith denied the use of drugs. The importance of such evidence is, of course, lessened when the perjury involves some collateral matter concerning the witness, rather

than testimony about facts relevant to the merits of the case. *Cf. United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). We assume here the materiality of the evidence.

■ *Fourth*, consideration must also be given to whether the newly discovered evidence is cumulative, that is simply additional evidence to that which was presented at trial as to a fact, or unique evidence that tends to prove a fact at issue. *United States v. Petrillo*, 821 F.2d 85, 90 (2d Cir. 1987); *cf. Mesarosh v. United States*, 352 U.S. 1, 9–14, 77 S.Ct. 1, 5–8, 1 L.Ed.2d 1 (1956). The evidence questioning the general credibility of Harry Smith was clearly cumulative. As recited by the district court:

> Smith was aggressively cross-examined by the defendant's lawyer, who relentlessly attacked Smith's credibility, called him a liar, and emphasized his lack of veracity in the past. He was shown to be a drug abuser, a narcotics profiteer in the $1 million range, and a convicted felon looking for a way to avoid a long prison sentence.

Since Mincey's testimony would have been admissible only for the purpose of showing that Smith lied about his drug use, a collateral fact that would simply affect the general credibility of Smith and was not evidence that he was lying as to a particular fact about the crime, the evidence was cumulative to other evidence of collateral matters that focused on his credibility.

■ Thus we come to the controlling issue in this case: the effect the evidence would have on the jury's verdict had it been submitted at this trial. *Cf. Taylor v. Illinois*, 484 U.S. 400, 414, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988) ("We presume that evidence that is not discovered until after the trial is over would not have affected the outcome."). This Circuit has suggested there are different standards of review on this issue depending upon whether the prosecution knew or should have known of the perjury. *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir.1991).

■ If the prosecution is charged with knowledge of the perjury, the conviction must be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (quotation omitted). If the prosecution was unaware of the perjury, a new trial is warranted if "the court {is left} with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Id.* (quotation omitted). Although the *Wallach* opinion cites several cases with these varying articulations of the standard for review, it is difficult to determine if there is a meaningful difference, or simply a difference in articulation of the impact that the perjured testimony must have in order to meet the Rule 33 test of "required in the interest of justice." The *Wallach* court itself held in the case before it that a new trial was justified under either standard of review. *Id.* at 457–58. The convictions were reversed because the perjured testimony was given by the Government's primary witness, the "centerpiece of the government's case." *Id.* at 457.

Although in *Wallach* the perjured testimony involved the collateral matter of whether the witness had stopped gambling at the direction of the prosecutor's office and because he recognized that he was "hooked" on gambling, both direct and cross examination had dealt at length with the subject. During examination the witness not only falsely stated that he had given up gambling but gave false explanations about certain contradictory evidence. The witness was later convicted of giving perjured testimony in this trial. *Id.* at 455 n. 2 & 455–56. This led the *Wallach* court to conclude that if it had "been brought to the attention of the jury that [the witness] was lying after he had purportedly undergone a moral transformation and decided to change his ways, his entire testimony may have been rejected by the jury." *Id.* at 457. His testimony, along with that of another witness known by the jury to be a convicted perjurer, was the only testimony that directly linked the defendants with the admittedly illegal conduct of the corporation of which they were all officers. *Id.* at 455. The *Wallach* court thus concluded

"as a matter of law that had the jury been aware of [the] perjury it probably would have acquitted the defendants." *Id.* at 458.

■ Thus the mere fact that Smith lied on the witness stand does not automatically entitle White to a new trial. There are ways to deal with a prosecuting attorney's knowing production of perjured testimony other than requiring a retrial when it is quite apparent that had the perjury been known to the jury, the outcome would have been the same. It is unclear in this case whether the Government knew of Smith's drug use when he denied it. No evidentiary hearing was held and the defendant was not permitted the discovery that might be necessary to develop this point. The district court did not comment on the prosecution's knowledge and discussed the case in terms of whether perjury in respect to the drug use "could have probably resulted in an acquittal." On this review, we, like the *Wallach* court, can use either standard and reach the same result.

In this regard, we are convinced by the district court's analysis and the Government's argument that the jury in fact gave little credence to Harry Smith's testimony. It appears clear from the record that the knowledge that Smith lied about his drug use would not have affected the verdict. White had been charged in a five count indictment containing one count of conspiracy and four counts of distribution. The jury acquitted White of all four counts of distribution where the only evidence was the uncorroborated testimony of Smith. If the jury had believed Smith, it would have had to find White guilty of those four counts. The only conviction was on the conspiracy count, where Smith's testimony was fully corroborated by other evidence showing Smith's involvement in the conspiracy. The verdict demonstrates that the jury did not rely on Smith's testimony alone to convict White. The district court correctly held that the newly discovered evidence that Smith may have lied about his drug use in 1990 and 1991 would have been merely the sort of cumulative impeachment material that is routinely held insufficient to warrant a new trial. *See*

*Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 357, 83 S.Ct. 448, 458, 9 L.Ed.2d 357 (1963) ("This is not a case ... where a conviction may be regarded or is conceded to have rested on perjured testimony. To overturn the denial of a new trial in this case ... would be tantamount to saying that any subsequently discovered inaccuracy in the testimony of an important trial witness, which might have affected his credibility in the eyes of the jury, would entitle a convicted defendant to a new trial. We cannot so hold." (footnote omitted)); *United States v. Petrillo*, 821 F.2d 85, 90 (2d Cir.1987).

■ Since it is not necessary to resolve the issues that might be the focus of an evidentiary hearing, the district court did not abuse its discretion in refusing to conduct an evidentiary hearing. *See United States v. Slocum*, 708 F.2d 587, 600 (11th Cir.1983).

### *Sentencing*

■ White contends that his sentence was improper, alleging: that the probation officer who prepared the presentence report was biased against him, that the district court erred in refusing to order the preparation of another presentence report, and that the court erred in failing to conduct an evidentiary hearing on disputed sentencing issues.

This claim is without merit. White was not sentenced pursuant to the Sentencing Guidelines. He has failed to substantiate a charge of bias. There is no indication that the sentencing judge was improperly influenced by the sentencing report. A sentencing judge may consider a wide range of information in arriving at an appropriate sentence. *United States v. Romano*, 825 F.2d 725, 728 (2d Cir.1987). The record does not reflect that the sentencing judge relied on disputed facts in sentencing White. Accordingly, there was no abuse of discretion in his denial of White's request for an evidentiary hearing.

AFFIRMED.