UNITED STATES of America

v.

James L. BOULER.

No. 3:92CR37–01–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 1, 1992.

Gretchen C.F. Shappert, Frank D. Whitney, Charlotte, N.C., for plaintiff.

James F. Wyatt, III, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on motion of Defendant, filed June 22, 1992, to dismiss the indictment. The United States (the "Government") filed a response on July 10, 1992. Defendant filed a reply to the Government's response on July 24, 1992.

### FACTUAL BACKGROUND

The underlying issue here concerns the interface between the instant criminal case and a civil seizure that the Government initiated against a $57,000 check issued to the order of Defendant (the "check"). The Government originally seized the check on October 31, 1991 pursuant to a seizure warrant issued by Magistrate Judge Paul B. Taylor on October 22, 1991.

On November 13, 1991, Defendant filed a civil action (Misc. No. 2615–MU) seeking the return of the check. Pursuant to the Clerk's lottery system, the case was assigned to the Honorable Graham C. Mullen. On March 9, 1992, Judge Mullen ordered the check returned to Defendant.

The Government approached this Court the next day, March 10, 1992, with an *ex parte* application for a protective order as to the same check. The Government made this *ex parte* application pursuant to Title 21, United States Code, Section 853(e)(1)(A) and the probable cause established by the bill of indictment filed February 6, 1992. On March 10, 1992, this Court entered a protective order as to the check on the *ex parte* application of the Government.

### DISCUSSION

Defendant argues that the Court should dismiss the indictment because of alleged prosecutorial misconduct including: improperly sealing the indictment; misleading the Court as to the nature of the check—the res in both forfeiture proceedings—and its involvement in the civil case before Judge Mullen; improperly engaging in *ex parte* contacts with the Court; and, improperly securing protective orders on an *ex parte* basis. Defendant also argues that the Court should dismiss the indictment because of the "potential for conflict and the appearance of impropriety resulting from one United States Attorney's Office using the criminal process to secure a disputed res in a related civil proceeding." The Court will address these issue *seriatim*.

1.  Prosecutorial Misconduct

a.  Improperly Sealing the Indictment

■ There is no evidence in the record that the sealing of the indictment for 33 days prejudiced Defendant in any way. Defendant certainly has not made the requisite showing of substantial prejudice. *See United States v. Accetturo*, 858 F.2d 679, 681 (11th Cir.1988) ("prejudice to the defendant is an essential element when a criminal defendant seeks dismissal of an indictment due to prosecutorial misconduct").

b.  Misleading the Court

Defendant alleges that the Government misled the Court apparently by failing to inform the Court as to the involvement of the res in the civil forfeiture. By Defendant's own admission—he makes this claim "based on information and belief"—he has no objective evidence or proffer of evidence to support this claim. Moreover, whether the Government revealed to this Court the existence and nature of the pending civil action in Judge Mullen's Court is immaterial to whether it was proper for this Court to enter a protective order pursuant to the bill of indictment.

c. *Ex parte* contacts with the Court

■ Defendant argues—again based on information and belief—that the Government has improperly engaged in *ex parte* contacts with the Court. Defendant has not presented evidence and, indeed, has not even made a proffer of what the Government might have said.

The law does not require the Court to rely on any *ex parte* argument or presentation of facts in order to enter a protective order. The probable cause as established by the bill of indictment allows the Court to enter a pre-conviction restraining order.

The language of the statute itself authorizes the Court to enter a protective order upon the *ex parte* application of the Government. 21 U.S.C. § 853(e)(1). The statute even allows the Court to enter a temporary restraining order "upon application of the United States without notice or opportunity for a hearing *when an ... indictment has not yet been filed* ... if the United States demonstrates that there is probable cause to believe that the property ... would, in the event of conviction, be subject to forfeiture." 21 U.S.C. § 853(e)(2) (emphasis added). The Court, therefore, obviously may enter a protective order upon an *ex parte* application in a case in which the Government has obtained an indictment with a charge of forfeiture. Furthermore, as the Government has pointed out in its brief, the legislative history contemplates the *ex parte* issuance of protective orders in cases in which the grand jury has returned an indictment with a forfeiture count:

> In contrast to the pre-indictment restraining order authority set out [in 21 U.S.C. § 853(e)(1)(B)], the post-indictment restraining order provision [21 U.S.C. § 853(e)(1)(A)] does not require prior notice and opportunity to be heard. The indictment or information gives notice of the government's intent to seek forfeiture of the property. Moreover, the necessity of quickly obtaining a restraining order after indictment in the criminal forfeiture context presents exigencies not present when restraining or-

ders are sought in the ordinary civil context.

\* \* \* \* \* \*

> For the purposes of issuing a restraining order, the probable cause established in the indictment ... is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.

Comprehensive Crime Control Act of 1984, S.Rep. No. 225, 98th Cong., 2d Sess. 203 *reprinted in* 1984 U.S.C.C.A.N. 3182, 3386 (this passage concerns criminal forfeiture pursuant to 18 U.S.C. § 1963(e) (the RICO forfeiture provisions), but is cross referenced at 1984 U.S.C.C.A.N. 3396).

The Supreme Court has upheld the issuance of an *ex parte* restraining order in circumstances similar to the instant case. *See United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). The Court held that "assets in a defendant's possession may be restrained [pursuant to 21 U.S.C. § 853(e)(1)(A)] based on a finding of probable cause to believe that the assets are forfeitable." 491 U.S. at 615, 109 S.Ct. at 2666. As the Court notes in *Monsanto*, "it would be odd to conclude that the Government may not restrain property ... based on a finding of probable cause, when we [the Supreme Court] have held that ... the Government may restrain *persons* where there is a finding of probable cause to believe that the accused has committed a serious offense." *Id.*

In the instant case, the Court entered the protective order pursuant to the Government's *ex parte* written application and the probable cause established by the bill of indictment. The Court did not rely on any *ex parte* argument or presentation of facts not contained in the bill of indictment or the Government's application for a protective order. As discussed above, the Court clearly had the authority to enter the protective order upon the Government's *ex parte* application.

Because the Court could enter the protective order upon the probable cause established by the forfeiture count in the bill of indictment, no basis for Defendant's gener-

al, unsupported allegation of improper *ex parte* contact exists.

### d. Improperly securing the protective order

As a corollary, Defendant argues that the Government improperly obtained the protective order on an *ex parte* basis. Defendant contends that these *ex parte* orders violate both the fifth amendment and the language of the forfeiture statute itself. *See* 21 U.S.C. § 853(e)(1)(A).

As discussed extensively above, Defendant's argument on this ground is without merit. The language of the statute and recent Supreme Court authority support the issuance of the instant protective order on an *ex parte* basis.

### 2. Due Process—Defendant's Conflict Theory

■ Defendant alleges that the Government has instituted "this criminal case in such a manner as to influence the outcome of a civil proceeding." Although Defendant contends that this argument "focuses upon the appearance of impropriety generated by the use of the substitute assets provision in the indictment," Defendant has cited no cases on point.[1]

Defendant relies heavily on two cases, *Young v. United States ex rel Vuitton et Fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) and *United States ex rel S.E.C. v. Carter*, 907 F.2d 484 (5th Cir.1990). The *Young* holding was very narrow and does not touch upon any potential conflict of interest within the United States Attorney's Office.

*Young* was a prosecution for criminal contempt. The underlying lawsuit ended in a settlement. 481 U.S. at 791, 107 S.Ct. at 2129. The Court entered an injunction, which prohibited the defendants from counterfeiting plaintiff's products, pursuant to that settlement. *Id.* Approximately six months after the Court entered the injunction, the plaintiff in the civil action conducted an undercover "sting" operation to determine whether the defendant was com-

plying with the injunction. *Id.* at 792, 107 S.Ct. at 2129. When the plaintiff determined that the defendants were again counterfeiting plaintiff's products, plaintiff's attorneys approached the district court with the evidence and requested that the court appoint them as special counsel to prosecute a criminal contempt action for defendants' violation of the injunction. *Id.* The district court appointed the two attorneys who represented plaintiff in obtaining the injunction as special counsel to represent the Government. *Id.* at 793, 107 S.Ct. at 2130. The United States Attorney's Office took no part in the prosecution of the case. *Id.*

On appeal of their convictions, defendants argued that the district court's appointment (as special prosecutors) of the same attorneys who procured the injunction in the underlying lawsuit violated "their [the defendants'] right to be prosecuted only by an impartial prosector." *Id.* at 793–794, 107 S.Ct. at 2130. The Supreme Court reversed the convictions. A plurality of four held that "counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order." *Id.* at 790, 107 S.Ct. at 2128.

This straight-forward, narrow holding does not even address conflicts of interest *internal* to the United States Attorney's Office. Moreover, only Justice Blackmun suggested a broader holding. Justice Blackmun would have held that "the practice ... of appointing an interested party's counsel to prosecute for criminal contempt is a violation of due process." *Id.* The Court's reading of *Young* reveals that it concerns only prosecutions for criminal contempt in which the Court appoints the same private attorney who obtained the underlying court order to prosecute the criminal contempt.

The facts in the other case upon which Defendant primarily relies are similar. *See*

---

**1.** Defendant states in his reply brief that he is not raising the issue of vindictive prosecution. The Court, therefore, will not address that issue

here, but will look to the cases that Defendant has cited to determine if they support his claim.

*United States ex rel. S.E.C. v. Carter*, 907 F.2d 484 (5th Cir.1984). *Carter* was a criminal contempt prosecution for violation of an injunction. *Id.* at 484–485. The only difference in this case is that the plaintiff in the original civil lawsuit was the Securities and Exchange Commission, a government entity as opposed to the private party plaintiff in *Young*. The district court that originally entered the injunction appointed the same Securities and Exchange Commission attorneys who obtained the injunction to prosecute the criminal contempt. *Id.* at 485. In reversing the defendants' convictions, the *Young* Court relied heavily on the fact that the United States Attorney was not involved in the prosecution of the case.

As demonstrated above, neither *Young* nor *Carter* is factually similar to the instant case. Both cases involve the exercise of the court's discretion in the appointment of special counsel to prosecute criminal contempt of court. This case is a prosecution for controlled substances and related offenses, not a contempt prosecution. In both underlying lawsuits, the defendants were accused of *civil* misconduct; in the instant civil forfeiture action, however, the alleged misconduct is criminal even though the action itself is civil. In *Young* and *Carter* the United States Attorney was not involved in either the underlying lawsuits or the contempt prosecutions. In this case the Government initiated the civil forfeiture and is also handling the criminal prosecution.

The one similarity between those cases and the instant case is nominal. In *Young*

and *Carter*, the attorneys who prosecuted the criminal contempt had previously obtained the underlying injunctions. In this case the United States Attorney's Office originally seized the res in a civil action and later forfeited the same res in a criminal proceeding.

The instant does not raise the same concerns as the criminal contempt scenario. The original lawsuits in *Young* and *Carter* were civil in nature and the injunction obtained acted upon the persons of the defendants. As noted above, a civil forfeiture action relies on criminal conduct to support the forfeiture of the res. Although the actions are distinct, and proceed under very different procedural rules [2], no conflict of interest is presented because the United States Attorney normally is exercising his prosecutorial discretion in each case to the same end, to-wit, to deter and punish criminal conduct. Although there is some possibility that the Government may prosecute a person who files a claim to a res in a civil case merely to damper the exercise of a claimant's right to file a claim, Defendant should have raised this issue as a vindictive prosecution claim.[3]

The facts of this case are consistent with a reasonable exercise of prosecutorial discretion. Assuming *arguendo* that the Government was held to an "appearance of impropriety" standard—as Defendant contends it should be—the facts of this case affirmatively demonstrate that the Government was merely using all its resources zealously, but within permissible bounds. The affidavit of Internal Revenue Agent Danna G. Coffee, which the Government

---

**2.** This difference in procedural rules allows the United States Attorney two options for the forfeiture of property that he may use to be as effective and efficient as possible in his goal of depriving persons of criminally-derived property. For instance, the Government may make a strategic decision to proceed by civil forfeiture against the res before indicting the defendant because the civil forfeiture procedure allows the Government to seize the res quickly—before the filing of the civil complaint—and places a lesser burden of proof on the Government than criminal forfeiture does.

**3.** A defendant may be able to prove vindictive prosecution in a case such as the instant one in

which the Government prosecutes the defendant after he files a claim in a civil forfeiture action. A claim of vindictive prosecution places the burden of proof on the defendant and requires him to overcome a presumption in favor of the Government. *See United States v. White*, 972 F.2d 16, 19–20 (2d Cir.1992) (finding that defendant alleging vindictive prosecution must overcome the "presumption of legitimacy of the prosecutor's charging decision.") As in *White*, Defendant in the instant case has not presented any evidence of actual vindictiveness. Furthermore, Defendant has stated specifically that he is not pursuing such a claim here.

submitted in support of its application for a seizure warrant on October 22, 1991, confirms that the Government was investigating Defendant for substantial criminal offenses prior to the time that the Government obtained the original seizure warrant on October 22, 1991. *See* Defendant's Motion to Dismiss the Indictment, Exhibit L (Judge Mullen's Order granting Defendant's—then the Claimant—motion for return of the check) at 3–6 (hereinafter the "Mullen Order"). Based on this affidavit, filed five months before the basis for this motion arose, the Court finds that the Government proceeded by civil forfeiture in order to secure quickly a liquid asset, the $57,000 check.

The issue with the civil seizure arose when Judge Mullen reviewed Agent Coffee's affidavit filed in support of the seizure warrant. Judge Mullen determined, after a careful review of the affidavit, that the Government had demonstrated a callous disregard for Defendant's—then the Claimant—constitutional rights. Mullen Order at 17. Specifically, Judge Mullen found, *inter alia*, that the Government had failed to establish the veracity of its confidential informant and had failed to conduct any investigation into the source of the res to determine whether it may have originated from a legitimate source. Judge Mullen obviously ordered the return of the property because he determined that the affidavit in support of the underlying application for a seizure warrant was insufficient to support a seizure in the form that it was presented to the Magistrate on October 22, 1991.

Judge Mullen's conclusion that the civil seizure was insufficient in no way prohibits the Government from initiating a *proper* criminal forfeiture action. In essence Judge Mullen determined merely that the Government had not established probable cause to seize the res on October 31, 1991. This Court determined on March 10, 1992 that the Government subsequently established probable cause before the grand jury as evidenced by the indictment.

In essence, Defendant proposes a *per se* rule of vindictive prosecution. Pursuant to this rule, the Government would be prohibited from pursuing criminal forfeiture as to a res after it had seized the res pursuant to a civil forfeiture and the potential defendant in the criminal action had filed a claim to the res in the civil forfeiture. Future defendants would not have to establish any prejudice to support their motions to dismiss. The Court declines to adopt such a rule.

NOW, THEREFORE, IT IS ORDERED that Defendant's motion to dismiss the indictment be, and hereby is, DENIED.