John **EUBANKS, Tsoede, Simpson, John Bowman, Benjamin Collier, and Kenneth Campbell, Petitioners,**

v.

**UNITED STATES of America, Respondent.**

Nos. 97 Civ. 3891 (PKL), 96 Civ. 9225 (PKL), 97 Civ. 2568 (PKL), 97 Civ. 2960 (PKL), 97 Civ. 3041 (PKL), 92 Cr. 392 (PKL).

United States District Court, S.D. New York.

Aug. 11, 1998.

Jon Eubanks, White Deer, PA, pro se.

Tsoede Simpson, Otisville, NY, pro se.

John Bowman, Lompoc, CA, pro se.

Benjamin Collier, Ray Brook, NY, pro se.

Kenneth Campbell, White Deer, PA, pro se.

Mary Jo White, U.S. Attorney, Southern District of New York, New York City, Richard Zabel, Nelson A. Boxer, of counsel.

## OPINION AND ORDER

LEISURE, District Judge.

Petitioners *pro se* John Eubanks ("Eubanks"), John Bowman ("Bowman"), Benjamin Collier ("Collier"), and Kenneth Campbell ("Campbell") are federal prisoners challenging their sentences pursuant to Title 28, United States Code ("U.S.C."), Section 2255. Eubanks also brings a petition for reconsideration of a previously decided motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Petitioner

*pro se* Tsoede Simpson ("Simpson") is a federal prisoner bringing a petition for reconsideration of his previously decided § 2255 motion. All five individuals were charged with drug trafficking offenses in a multi-count indictment (the "Indictment"). After a four-week jury trial, the jury convicted Eubanks and Bowman of all counts in the Indictment. Simpson, Collier, and Campbell pleaded guilty before trial. The Court considers these petitions together for the sake of judicial economy. For the reasons stated below, the § 2255 petitions, Simpson's petition for reconsideration of his § 2255 petition, and Eubanks' petition for reconsideration of his Rule 33 motion are denied.

## BACKGROUND

### I. *Procedural Background*

On October 6, 1992, October 13, 1992, and October 22, 1992, respectively, the Court accepted Simpson's, Collier's, and Campbell's guilty pleas in response to charges of conspiracy to distribute and to possess with intent to distribute cocaine base, commonly known as "crack," in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. Subsequently, the Court sentenced each of them to 168 months imprisonment and five years supervised release. Meanwhile, on December 11, 1992, a jury convicted Bowman of the single offense with which he was charged, distribution of and possession with intent to distribute crack and aiding and abetting the same, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.[1] On July 14, 1993, the Court sentenced Bowman to life imprisonment and ten years supervised release. The same jury convicted Eubanks of the two charges on which he was indicted: (1) conspiracy to distribute and to possess with intent to distribute crack, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846; and (2) distribution of and possession with intent to distribute crack and aiding and abetting the same, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B)

---

1. In addition, pursuant to 21 U.S.C. § 851, the Government filed a prior felony information against Bowman with respect to his two state narcotics convictions, thus subjecting Bowman to enhanced penalty provisions under 21 U.S.C. § 851(b)(1)(A).

and 18 U.S.C. § 2. On February 1, 1994, the Court sentenced Eubanks to life imprisonment on the conspiracy count, with a concurrent forty-year term of imprisonment on the possession count.

In a Summary Order entered December 8, 1994, the United States Court of Appeals for the Second Circuit affirmed the convictions of Eubanks, Bowman, and Simpson. On August 25, 1994, Campbell withdrew his appeal to the Second Circuit. At Collier's request, on March 16, 1998, the Second Circuit dismissed his appeal pending determination of this motion. All five defendants currently are incarcerated. On July 15, 1997, this Court denied Eubanks' and Bowman's motions for new trials pursuant to Fed. R.Crim.P. 33 and Simpson's motion to set aside his sentence and for a *Fatico* hearing pursuant to 28 U.S.C. § 2255.

In the instant Petitions, Campbell, Collier, Eubanks, and Bowman seek to set aside their sentences for the various reasons described below.[2] Eubanks also applies for reconsideration of his Rule 33 motion, and Simpson seeks reconsideration of his previous habeas corpus Petition.[3]

## II. *Factual Background*

The evidence presented at trial established that the defendants were members of a narcotics trafficking organization (the "Organization") that sold crack, principally at two locations: one on 127th Street between Madison and Park Avenues (the "Manhattan spot"), and one on Clay Avenue between 173d and 174th Streets (the "Bronx spot"). Three cooperating witnesses—former members of the Organization—as well as six others testified.

The accomplice witnesses testified to Eubanks', Simpson's and Bowman's roles in the Organization. Eubanks oversaw the Bronx spot. Bowman was a supervisor, known as a

"lieutenant", at the same location, and later at the Manhattan spot. Simpson was a seller, known as a "pitcher", and later a lieutenant, at the Bronx spot, and also transported money and crack between the two locations. The testimony of the accomplice witnesses substantially corroborated one another's, and the testimony of Delano Reid ("Reid"), an undercover agent of the Bureau of Alcohol, Tobacco, and Firearms, (the "ATF"), and that of Steven Howard ("Howard"), a confidential informant ("CI"), also corroborated the accomplice witnesses' testimony. Both Reid and Howard engaged in numerous tape-recorded drug transactions with members of the Organization. The Government also presented testimony of ATF agents and New York City Housing Police officers who surveilled and videotaped both spots. In his plea agreement, Collier stipulated that he also was a manager of the criminal activity charged in the Indictment. Campbell stipulated in his plea agreement that he was a manager of the criminal activity charged in the Indictment and possessed a firearm during commission of the criminal activity charged. Both Collier and Campbell acknowledged that they conspired to distribute and to possess with intent to distribute 50 grams and more of crack.

The physical evidence included thousands of vials of crack, cocaine powder, extensive notebooks and records of narcotics processing and sales, bundles of cash, photographs, numerous firearms and ammunition, and various paraphernalia for processing and packaging crack. The authorities seized this evidence from the homes of certain Organization members and the Organization's mill, a basement location where drugs and firearms were stored. The Organization also maintained a storage area at 1690 Clay Avenue (the "Bronx stash"), where the group

---

**2.** Eubanks' motion to amend his § 2255 motion is granted. In addition to his original petition filed May 28, 1997, the Court also will consider the claims raised in Eubanks' Amended Petition, which he filed on August 19, 1997.

**3.** The Government originally opposed certain of the petitioner's motions based on their untimeliness pursuant to the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. No. 104–132, 110 Stat. 1214 (codified at 28 U.S.C. § 2255(1)–(4) (April 24, 1996)). However, the Government withdraws this challenge in light of *Mickens v. United States*, 148 F.3d 145 (2d Cir.1998), which allows prisoners a full year after the AEDPA's effective date in which to file their habeas petitions.

kept firearms, ammunition, and proceeds of narcotics sales.

The physical evidence, like the testimony of the accomplices and law enforcement witnesses, linked defendants to the Organization's narcotics operations. For example, the notebooks in which the Organization recorded its drug transactions contained the names "Marcell"[4] and "J.B."[5] next to entries that reflected sales of "packs" of crack vials. The Government also presented audio recordings of narcotics transactions in which Organization members inculpate "J.B." and video recordings taped in the vicinity of the Bronx stash that show accomplice witness Charmaine Francis ("Francis") delivering cash to Eubanks and a firearm to Eubanks and Simpson.

## DISCUSSION

### I. General Standards for Judgment of § 2255 Petitions

Collateral relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). A petitioner may not use a § 2255 motion to "'relitigate questions which were raised and considered on direct appeal.'" *Riascos–Prado v. United States,* 66 F.3d 30, 33 (2d Cir. 1995) (quoting *Cabrera v. United States,* 972 F.2d 23, 25 (2d Cir.1992)). Moreover, a petitioner who has failed to raise an issue on direct appeal may not do so in a § 2255 petition. *See Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992) ("failure to raise a claim on direct appeal is itself a default").

4. Eubanks testified that Marcell was his nickname, and all three accomplice witnesses positively identified him as Marcell.

5. J.B. was listed as Bowman's alias. This was confirmed by Bowman at the time of his arrest; further, the accomplice witnesses and Howard, the CI, positively identified Bowman as J.B.

Significantly, a petitioner may overcome a procedural default by showing "cause and prejudice"; he must show cause for not having raised a particular claim on appeal and must demonstrate that the failure to raise that claim actually prejudiced his case.[6] *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also Campino,* 968 F.2d at 189. A petitioner who cannot demonstrate cause and prejudice may nonetheless be heard if he can show that failure to hear his claim would lead to a "fundamental miscarriage of justice." *See Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

### II. Sentencing Claims Not Cognizable Under § 2255

With regard to alleged errors under the United States Sentencing Guidelines (the "Sentencing Guidelines"), the Second Circuit has held expressly that where the defendant failed to appeal these errors on direct appeal, they are not cognizable under § 2255 unless there was a "complete miscarriage of justice." *See Graziano v. United States,* 83 F.3d 587, 590 (2d Cir.1996) ("Insofar as claims regarding a sentencing court's error on failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional, we join several other circuits in holding that, absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal."); *see also Knight v. United States,* 37 F.3d 769, 772–73 (1st Cir.1994) (claims concerning imposition of fine and computation of criminal history under the Sentencing Guidelines are not cognizable under § 2255); *Scott v. United States,* 997 F.2d 340, 342 (7th Cir.1993) ("the Supreme Court has never approved the use of collateral relief for any non-constitutional error that does not deprive the court of jurisdiction").

6. Waiver of the right to appeal in a plea agreement does not constitute the requisite "cause" for failure to appeal in the context of a § 2255 petition. The Second Circuit has observed that to treat a waiver of appeal in a plea agreement as "cause" "turns the 'cause' requirement on its head.... [S]o obvious a circumvention of a plea agreement [may not be countenanced]." *United States v. Pipitone,* 67 F.3d 34, 39 (2d Cir.1995).

■ Bowman claims that the Court improperly applied the Sentencing Guidelines when it adopted the Pre–Sentence Report's recommended enhancements for obstruction of justice and managerial role. Campbell contends that the Court improperly applied the Sentencing Guidelines when it adopted the Pre–Sentence Report's recommended enhancements for possession of firearms and managerial role, and when the Court refused to grant a downward departure based on Campbell's family circumstances and his "atypical offender" status. Bowman and Campbell waived their right to directly appeal their sentences and their claims clearly are neither constitutional nor jurisdictional. Nor would the failure to address these claims result in a "fundamental miscarriage of justice." Therefore, petitioners' requests that the Court modify their sentences based on improper application of the Sentencing Guidelines are denied.

### III. *Other Procedurally Defaulted Claims*

■ Petitioners Bowman, Eubanks, and Campbell assert a variety of claims not raised on direct appeal. Eubanks claims that the prosecution knowingly permitted perjury at trial by witnesses Francis, Kevin Brewington ("Brewington"), and Peter Thron ("Thron"). "Where the allegation is that there is new evidence of perjury, 'a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury.'" *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir.1995) (Kearse, J.) (quoting *United States v. White*, 972 F.2d 16, 20 (2d Cir.1992)). Eubanks has failed to make the threshold showing that any of the witnesses in his trial perjured themselves. Eubanks proffers no cause for his failure to raise these claims on direct appeal, and does not demonstrate that he has suffered a fundamental miscarriage of justice.[7] Accordingly, Eubanks' perjury claims are barred.

■ Petitioner Bowman claims that: (1) the Court improperly admitted at trial evidence of threats that Bowman made to Brewington, a witness for the Government, as evidence of Bowman's consciousness of guilt and (2) it was improper for the Court to rely on state convictions for sentence enhancement pursuant to 21 U.S.C. §§ 851, 841(b)(1)(A). These claims were ripe for review on direct appeal and Bowman shows no cause for his failure to raise them there. Moreover, the Court's refusal to hear these claims will not result in a fundamental miscarriage of justice. Therefore, the claims are procedurally barred.

■ Campbell contends that he was denied due process at sentencing. His argument essentially restates the challenges he made to his sentence calculation under the Sentencing Guidelines, discussed, *supra*, and he adds only the contentions that the standard of proof regarding factual determinations for sentencing should not be preponderance of the evidence and that the quantity of cocaine base attributed to him was erroneous. As Campbell does not demonstrate cause for his failure to raise these claims on direct appeal, and because these claims are clearly of neither a constitutional nor jurisdictional nature, these claims are cognizable only if refusal to hear them would result in a complete miscarriage of justice. The Court determines, *supra*, that Campbell's challenges to the Court's application of the Sentencing Guidelines are meritless. Therefore, refusal to hear them constitutes neither a denial of due process nor a miscarriage of justice. As the facts support the stipulation of the quantity of crack attributed to Campbell, there was no miscarriage of justice with regard to this element of the sentence.[8]

---

7. Eubanks' conviction was further supported by: (1) the testimony of Cynthia Sales, who worked directly for Eubanks packaging and delivering crack; (2) incriminating drug records seized from the homes of other members of the Organization that contain Eubanks' nickname; (3) the testimony of undercover agent Reid; (4) videotapes of Eubanks receiving drug proceeds, a firearm, and ammunition from co-conspirators; and (5) audiotapes in which other members of the Organization directly implicate Eubanks in the conspiracy.

8. Campbell sold 510 vials of crack, and an additional 992 vials either were sold by his co-defendants to an ATF agent or informant or were seized from his co-defendants. Since each vial contained approximately .09 grams of crack, the crack weighed approximately 135.18 grams. In addition, the defendant sold approximately 28

Further, as the standard of proof at sentencing unquestionably is preponderance of the evidence, no miscarriage of justice exists under this claim either. *See United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997) (per curiam). Therefore, Campbell's due process challenge is barred.

## IV. *Ineffective Assistance of Counsel Claims*

Three of the petitioners claim that they received ineffective assistance of counsel. All of these claims are devoid of merit. Campbell asserts that: (1) his counsel did not provide sufficient rebuttal information at sentencing; (2) failed to file an appeal; and (3) was generally ineffective. Collier claims that his counsel failed: (1) to present evidence that would have shown that Collier distributed a form of cocaine base other than crack; and (2) to file an appeal. Eubanks contends that his counsel at trial failed: (1) to move to suppress evidence of his prior convictions; (2) to investigate several potential witnesses; (3) to present evidence at trial that would have supported the defense's theory of multiple conspiracies; and (4) to effectively cross-examine several witnesses. Eubanks also argues that his counsel at sentencing and on appeal: (1) allowed Eubanks to be sentenced based on an erroneous amount of crack; (2) allowed Eubanks to be inaccurately identified in the Pre-Sentence Report as a leader of the Organization; and (3) failed to raise the claim that Eubanks' trial counsel was ineffective due to a conflict of interest.

### A. *Legal Standard*

█ In considering on collateral attack claims of ineffective assistance of counsel, the Court may bypass both the "cause and prejudice" and "fundamental miscarriage of justice" standards. The Second Circuit has recognized that a lawyer's ineffective representation itself may have compromised a petitioner's ability to raise a particular claim on appeal. *See Billy–Eko v. United States,* 8 F.3d 111, 114 (2d Cir.1993); *see also Ciak v. United States,* 59 F.3d 296, 303 (2d Cir.1995).

The Court has recognized further that since evidence from outside the record is often necessary to review the effectiveness of counsel, claims of ineffective representation are best brought before the trial court in a § 2255 petition. *See Billy–Eko,* 8 F.3d at 114. Accordingly, the failure to allege ineffective assistance of counsel on direct appeal does not raise a procedural bar to collateral review. *See id.*

The Supreme Court has stated that in order to show ineffective assistance of counsel, a defendant must prove (1) that counsel's performance was deficient in that counsel made errors so serious as not to function as the "counsel" guaranteed defendants by the Sixth Amendment to the United States Constitution, and (2) that counsel's deficient performance actually prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

█ To satisfy the first prong of this test, a defendant must show that counsel's performance fell below "an objective standard of reasonableness under prevailing professional norms." *See id.* at 668, 104 S.Ct. 2052; *see also United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.1995). In passing upon this issue, a court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690, 104 S.Ct. 2052; *see also Kirsh,* 54 F.3d at 1071. A court evaluating counsel's performance must do so from counsel's perspective at the time of the alleged error and in light of the circumstances. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see also Kimmelman v. Morrison,* 477 U.S. 365, 380, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In so doing, the reviewing court must make every effort to "eliminate the distorting effects of hindsight." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Once a defendant has proven that counsel's performance was deficient, he must prove

grams of loose crack to an undercover agent for a total of approximately 163.18 grams of crack. The numbers more than account for Campbell's

sentence base offense level of 34, which requires a minimum of 50 grams of crack.

that counsel's errors actually prejudiced his case. To prove actual prejudice, a defendant "must show that there is a reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see also Kimmelman*, 477 U.S. at 381, 106 S.Ct. 2574. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

### B. Campbell's Claims

■ Campbell argues that his counsel's failure to provide sufficient rebuttal information at sentencing constitutes ineffective assistance of counsel. This claim is without merit. Counsel's performance was acceptable under an objective standard of prevailing norms. Counsel made arguments and submissions on Campbell's behalf before and at sentencing even though there was overwhelming evidence of Campbell's guilt. Therefore, the Court finds that Campbell has not shown that he has been deprived of the counsel guaranteed by the Sixth Amendment.

■ Campbell also claims that his counsel was ineffective because he failed to file a notice of appeal. This argument is baseless as Campbell waived his right to appeal a sentence within a stipulated range.[9] As the Court sentenced Campbell within the stipulated range, his claim must fail.

Campbell next submits to the Court the vague assertion that his counsel generally was ineffective. Campbell realleges all the other claims made in his petition and declares that although his case does not involve a claim of innocence of the crime itself, the alleged ineffective strategies of counsel and erroneous findings of the Court equate to a fundamental miscarriage of justice. Insofar as this argument claims ineffective assistance of counsel, Campbell does not make any specific contentions as to the deficiency in counsel's performance that the Court has not already rejected. The Court therefore determines that Campbell did not receive ineffective assistance of counsel.

### C. Collier's Claims[10]

Collier contends that his counsel failed to present important mitigating evidence that would have shown that Collier distributed a form of cocaine base other than crack, and that this error resulted in a higher sentence under the Sentencing Guidelines. Collier also claims that his counsel did not file an appeal even though Collier maintained that right. He argues that these failures are not within the range of reasonable professional competence and thus constitute ineffective assistance of counsel.

■ The Court finds that the failure of Collier's counsel to challenge the designation of the substance as crack was not unreasonable given that ample evidence established that the substance in fact was crack.[11] Where the evidence at trial supports such a conclusion, "The failure of … counsel to dispute whether the drug involved in the conspiracy was crack cocaine … is not ineffective assistance of counsel." *Brown v. United States*, Nos. 97 Civ. 1880, 92 CR. 816-02, 97 Civ. 2194, 92 CR. 816-01, 1998 WL 30273, at *4 (S.D.N.Y. Jan.28, 1998).

Collier also claims that his counsel was ineffective because he failed to file a notice of

9. The parties stipulated to a sentencing range of between 168 and 210 months imprisonment. The Court sentenced Campbell to a 168-month term.

10. In a February 12, 1998 letter to this Court, Collier withdrew his claim, submitted in an amendment to his habeas Petition, that the amount of cocaine base attributed to him was in error. The Court therefore addresses only those issues submitted in Collier's original Petition.

Collier also wishes to join in the other petitioners' claims. Accordingly, insofar as any of the above claims apply to him, his Petition is denied.

11. For purposes of sentencing, "crack" is "a form of cocaine base usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." Amendment 487 to the United States Sentencing Guidelines. Evidence supporting the conclusion that the substance was crack includes: vials of cocaine base purchased from Collier that appeared lumpy and rocklike, the testimony of accomplice witnesses who described the process of manufacturing the crack, and the admission of Collier himself in his plea allocution and in the plea agreement that he distributed crack.

appeal. This argument is groundless as Collier waived his right to appeal a sentence within a stipulated range.[12] Since the Court sentenced Collier within the stipulated range, his claim must fail. The Court therefore finds that Collier's claims of ineffective assistance of counsel are meritless.

### D. Eubanks' Claims Concerning His Counsel at Trial

Eubanks claims ineffective assistance of counsel because of his trial counsel's alleged failure (1) to move to suppress evidence of his prior convictions, one of which was criminal possession of a weapon; (2) to investigate the possibility of having his sister, Nancy Ward, and a co-defendant, Lester Sykes, testify at trial; (3) to present at trial transcripts of audio tapes that allegedly would have refuted Eubanks' participation in a single conspiracy, in support of the defense's theory that multiple conspiracies existed; and (4) to effectively cross-examine witnesses Thron and Francis.

■■■■ The Court finds that the performance of Eubanks' counsel satisfied an objective standard of reasonableness. Eubanks' unsolicited admission to possession of five vials of crack when questioned by his own attorney about his prior convictions was part of the defense's strategy to demonstrate that Eubanks was not a member of the charged conspiracy, but of a separate conspiracy. Clearly, this strategic choice involving admission of prior convictions does not fall outside the standard of professional norms. Counsel's decisions to refrain from calling to testify Sykes, who was a witness for the Government, and Ward were similarly reasonable. Eubanks offers no evidence that either of his proposed witnesses could have contributed to his defense. Moreover, Eubanks offers no evidence to support his claim that counsel unreasonably failed to investigate calling these proposed witnesses.

■■■ As to the transcripts of the audio tapes, the Court finds meritless Eubanks' contention that counsel should have sought to admit certain tapes. Eubanks fails to offer any specific evidence as to exculpatory material that could be found on tape other than what was admitted at trial. In addition, the Court observed trial counsel's questioning of Thron and Francis and found it to be thorough and effective. Thus, the Court finds that the actions of Eubanks' trial counsel were well within the wide range of professionally competent assistance. Accordingly, Eubanks' claims of ineffective assistance of trial counsel are denied.

### E. Eubanks' Claims Concerning His Counsel at Sentencing and On Appeal

Petitioner Eubanks substituted counsel following trial and argues that his counsel for sentencing and on appeal was ineffective. Eubanks claims that counsel unreasonably allowed the sentencing to proceed with an inaccurate estimation of the amount of crack attributable to Eubanks. In fact, counsel challenged the amount of drugs attributable to Eubanks and the Court rejected that argument. See Eubanks' Sentencing Transcript at 20–22. To challenge the Court's decision further would have been futile and failure to do so did not render Eubanks' counsel ineffective.

■■■ Eubanks seems to claim that the Pre–Sentence Report inaccurately identified him as a leader of the Organization.[13] Although Eubanks does not explicitly state that this was because of ineffective assistance of counsel, this argument falls under the "Ineffective Assistance of Counsel at Sentencing" heading in Eubanks's motion. In this claim,

---

12. The parties stipulated to a sentencing range of between 168 and 210 months imprisonment. The Court sentenced Collier to a 168–month term.

13. In Eubanks' submission entitled "Reply to Government's Response to Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence," Eubanks seems to make reference to this claim: "Petitioner is not arguing his alleged leadership role as the government contends. The government [sic] recognize that Mr. Sykes was the leader of both [sic] location since 1988. Under the guidelines [sic] Petitioner relevant conduct should not have been the same as to Mr. Sykes under this provision." Eubanks' Reply ¶ 22. The Court will address this claim as it is unclear whether it is Eubanks' intention to retract it.

Eubanks does not allege any particular failure on the part of counsel. Therefore, the Court, in indulging a strong presumption of the reasonableness of counsel's conduct, holds that Eubanks has not shown that counsel acted unreasonably or unprofessionally regarding the information contained in the Pre–Sentence Report.

 Finally, Eubanks claims that his appellate counsel's failure to raise the claim that Eubanks' trial counsel was ineffective due to a conflict of interest constitutes ineffective assistance of counsel. Eubanks points to no particular evidence in support of his assertion of a conflict of interest nor does he allude to the reason for the alleged conflict. The Court addressed the issue of trial counsel's behavior in a Pretrial Conference on September 30, 1992, in which Eubanks complained that trial counsel had been incommunicative. The Court determined that Eubanks' motion to replace counsel was a dilatory tactic and that any actual concerns were unwarranted. Even so, the Court subsequently allowed the replacement of counsel for sentencing and appeal. However, appellate counsel was aware of the Court's generally favorable opinion of trial counsel's performance. Therefore, appellate counsel was not unreasonable for failing to raise this issue on appeal. For the above reasons, Eubanks' claims of ineffective assistance of counsel must fail.

### V. *Bowman's Request for Re-sentencing*

 Bowman claims that the Court must recalculate his sentence based on Amendment 505 to the United States Sentencing Guidelines (the "Amendment"). The Amendment caps the base Sentencing Guidelines level for all drug violations at 38 for offenses involving at least 1.5 kilograms of crack. The Amendment, effective November 1, 1994, is retroactively applicable, according to Sentencing Guidelines § 1B1.10(c). At the time of Bowman's sentencing, the appropriate

base offense level was 42 for 26.1 kilograms of crack, the amount estimated to have been involved in the conspiracy. Bowman's sentence was calculated using a base level of 42, with enhancements resulting in a life sentence. An Application Note to the Amendment states that "an upward departure may be warranted where the quantity is at least ten times the minimum quantity required for level 38." United States Sentencing Guidelines § 2D1.1 Amendment 505 & application note 19.

In the instant matter, the quantity involved was more than seventeen times the minimum quantity for level 38. The Court is satisfied that an upward departure from the offense level of 38 would be warranted and therefore the base offense level of 42 originally applied need not be modified.[14] Accordingly, Bowman's request for re-sentencing is denied.

### VI. *Bowman's Claim Under 18 U.S.C. § 851*

 Bowman received an increased sentence due to a prior felony information filed by the Government that documented two prior state felony drug convictions. Bowman directs the Court's attention to 21 U.S.C. § 851(a)(2), which reads:

An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

The current conviction was obtained pursuant to a grand jury indictment; however, Bowman's prior state convictions were not prosecuted by way of indictment. The Second Circuit has held that this section is facially ambiguous in that it is unclear whether the words "waived or was afforded prosecu-

---

14. Bowman's co-conspirator Eubanks raised a claim based on nearly identical facts in a motion pursuant to 18 U.S.C. § 3582(c)(2). The Court noted that Eubanks' was "precisely the type of 'extraordinary case[ ]' warranting an upward departure from the offense level cap of 38." *See* *Eubanks v. United States*, No. 96 Civ. 5883, 7S 92

Cr. 392, 1996 WL 706934 (S.D.N.Y. Dec. 9, 1996) (quoting application note 19 to Amendment 505 to the Sentencing Guidelines). The Court denied Eubanks' motion. As in Eubanks' case, the Court finds that Bowman's is precisely the type of "extraordinary case[ ]" that warrants an upward departure.

tion by indictment" apply to the prior convictions or to the current conviction. *See United States v. Collado,* 106 F.3d 1097, 1100 (2d Cir.1997) Bowman claims the statute, as interpreted in *Collado,* may require waiver or prosecution by indictment in his prior state convictions. However, more recently the Second Circuit has held that "§ 851(a)(2) requires the instant, and not the prior, offense to be prosecuted by grand jury indictment or waiver thereof." *United States v. Ortiz,* 143 F.3d 728, 732 (2d Cir.1998) (overruling *Collado*). Bowman's current conviction was obtained pursuant to a grand jury indictment. Therefore, his argument is without merit and is denied.

### VII. Petitions for Reconsideration of Previously Decided Motions

#### A. Simpson's Petition

■ On July 15, 1997, the Court denied Simpson's petition to set aside his sentence pursuant to 28 U.S.C. § 2255. Simpson now moves the Court to reconsider its decision. He bases his appeal for reconsideration on this Court's failure to address the claim in a supplementary § 2255 motion purportedly forwarded by Simpson on June 11, 1997. This supplemental motion supposedly claimed that the Court failed to inform Simpson of the mandatory minimum penalty for his crime as required by Fed.R.Crim.P. 11(c). Neither the Court, nor the District Court's Pro Se Clerk's Office, nor the United States Attorney's Office has any record of ever receiving this motion. Therefore, the claim was never properly before the Court. Accordingly, the Court denies Simpson's motion for reconsideration.[15]

#### B. Eubanks' Petition

■ On August 5, 1997, Eubanks filed a petition for reconsideration of this Court's Memorandum Order denying his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. *See United States v. Eubanks,* Nos. S7 92 CR. 392, 96 Civ. 9225, 1997 WL 401667 (S.D.N.Y. July 15, 1997). The Federal Rules of Criminal Procedure do not contemplate a motion to reconsider a denial of a post-judgment motion. *See* Fed.R.Crim.P. 33–35; cf. *United States v. Clark,* 984 F.2d 31, 32 (2d Cir.1993) (deciding that, even though a "section 2255 motion is a step in the underlying criminal case," the reference in Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts to Fed.R.App.P. 4(a) justifies reconsideration [of § 2255 petitions] under either Rule 59 or Rule 60(b) of the Federal Rules of Civil Procedure, but implying that a motion to reconsider a denial under Fed.R.Crim.P. 33 is unavailable). Therefore, the petition for reconsideration is denied.

### CONCLUSION

For the reasons stated above, Eubanks' motion to amend his § 2255 petition is HEREBY GRANTED; Collier's, Campbell's, Bowman's § 2255 petitions, Eubanks' § 2255 petition, as amended, Simpson's motion for reconsideration of his previous § 2255 petition, and Eubanks' motion for reconsideration of his previous motion pursuant to Fed.R.Crim.P. 33 are HEREBY DENIED.

**SO ORDERED.**

---

15. The Court also notes that even if Simpson filed a supplemental habeas corpus petition on June 11, 1997, the claim contained therein would be procedurally barred due to the statute of limitations placed on such habeas petitions by the AEDPA. Prisoners whose convictions became final before the AEDPA's enactment must file their habeas claims within one year after the effective date of the AEDPA. *See Mickens,* 148 F.3d 145, 148. Petitioner's additional claim filed after the deadline is not procedurally valid as of right merely because it is labeled "supplemental" to the original petition. In addition, Simpson has not attempted to show cause for his failure to raise the claim earlier.