[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 08-13820

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2011
JOHN LEY
CLERK

D. C. Docket No. 07-20291-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAIVI RODRIGUEZ,
MARIA HERNANDEZ,
a.k.a. Mayte Hernandez,
MARTA JIMENEZ,
ANA CAOS,

Defendants-Appellants,

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 25, 2011)

Before EDMONDSON and PRYOR, Circuit Judges, and EVANS,[*] District Judge.

PER CURIAM:

Maivi Rodriguez, Maria Hernandez, Marta Jimenez, and Ana Caos appeal their convictions and sentences related to their participation in a scheme to defraud the United States. These defendants raise a host of arguments on appeal, all of which lack merit. We affirm.

## I. BACKGROUND

The defendants' convictions stem from a kickback scheme to defraud the federal Medicare program. Owners of durable medical equipment companies paid doctors to write prescriptions for drugs and medical equipment that yielded high reimbursements from Medicare. They also paid others to pose as patients in need of drugs and equipment. The owners of the durable medical equipment companies then delivered prescriptions to pharmacies, which filled the prescriptions, sought reimbursements from Medicare, and gave 50 percent of the reimbursements to the owners of the durable medical equipment companies as a kickback. Many of the patients were not ill and did not need the prescribed medications or equipment. Maria Hernandez, Marta Jimenez, and Maivi Rodriguez were principals of durable medical equipment companies called Esmar Medical Equipment and Action Best

---

[*]Honorable Orinda D. Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

2

Medical Supplies, and they were prosecuted for their participation in the scheme. Ana Caos is a doctor who was also prosecuted for her involvement.

A federal grand jury in the Southern District of Florida returned a superseding indictment that charged Maivi Rodriguez, Maria Hernandez, Marta Jimenez, and Ana Caos with conspiracy to defraud the United States, to cause the submission of false claims, and to receive health care kickbacks, 18 U.S.C. §§ 287, 371; 42 U.S.C. § 1320a-7b(b)(1); and conspiracy to commit health care fraud, 18 U.S.C. §§ 1347, 1349. The indictment also charged Rodriguez, Hernandez, and Jimenez with two counts each of soliciting and receiving kickbacks involving a federal health care program, 18 U.S.C. § 2; 42 U.S.C. § 1320a-7b(b)(1). A jury convicted Rodriguez, Hernandez, Jimenez, and Caos of all counts. The district court declared a mistrial as to Caos because she had testified in her own defense and had been prohibited from consulting with her counsel overnight about her ongoing testimony. Caos proceeded to another trial and a jury again convicted her of both counts of conspiracy. The district court sentenced Rodriguez to concurrent periods of 51 months of imprisonment followed by concurrent 3-year periods of supervised release; Jimenez to concurrent periods of 31 months of imprisonment followed by concurrent 3-year periods of supervised release; Hernandez to concurrent periods of 51 months of imprisonment followed by concurrent 3-year

3

periods of supervised release; and Caos to concurrent periods of 41 months of imprisonment followed by concurrent 3-year periods of supervised release.

## II. STANDARDS OF REVIEW

Several standards of review govern this appeal. We review the denial of a guilty plea for abuse of discretion. United States v. Crosby, 739 F.2d 1542, 1544 (11th Cir. 1984). "We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). "We review a district court's evidentiary rulings for abuse of discretion." United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). "Evidentiary errors that are not specifically objected to at trial are reviewed for plain error." United States v. Williford, 764 F.2d 1493, 1502 (11th Cir. 1985). "We review cases dealing with discovery violations under [Federal Rule of Criminal Procedure] 16 using an abuse of discretion standard." United States v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989). "This court applies a two-part test to claims of prosecutorial misconduct: the challenged statements must be improper, and must have prejudicially affected the defendant's substantial rights. A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome would be different."

4

United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995) (citation omitted).  This

Court reviews a claim challenging the sufficiency of the evidence "de novo, but in

the light most favorable to the government, and accepting all reasonable inferences

which support the verdict[s] in order to determine if there was substantial evidence

from which a reasonable trier of fact could have concluded that the defendants

were guilty beyond a reasonable doubt."  United States v. Adkinson, 158 F.3d

1147, 1150 (11th Cir. 1998).  "A motion for new trial based on newly discovered

evidence is committed to the sound discretion of the trial court and will not be

overturned absent abuse of discretion."  United States v. Garcia, 13 F.3d 1464,

1472 (11th Cir. 1994).  "We review a district court's findings of fact for clear error

and its application of the Sentencing Guidelines de novo."  United States v.

Rendon, 354 F.3d 1320, 1329 (11th Cir. 2003).  The decision of the district court

to enhance a sentence for a defendant's role "as a leader or organizer under

Guideline 3B1.1 is a finding of fact reviewed only for clear error."  United States

v. Phillips, 287 F.3d 1053, 1055 (11th Cir. 2002).  "The district court's

determination of whether a defendant is entitled to a reduction for acceptance of

responsibility is a finding of fact which is entitled to great deference on appeal and

will be affirmed unless clearly erroneous."  United States v. Rodriguez, 959 F.2d

193, 195 (11th Cir. 1992).  "We review for clear error the district court's

determination regarding the amount of loss under the [Sentencing] Guidelines."

United States v. Grant, 431 F.3d 760, 762 (11th Cir. 2005).

## III. DISCUSSION

We divide our discussion of this appeal in seven parts. First, we discuss whether the district court abused its discretion when it refused to accept Hernandez's guilty plea. Second, we discuss whether Hernandez's trial counsel rendered ineffective assistance when he conceded in opening statements that Hernandez had accepted kickbacks. Third, we discuss whether the district court abused its discretion when it admitted certain evidence against Rodriguez, Jimenez, and Caos. Fourth, we discuss whether Jimenez merits a reversal of her convictions because of a discovery violation. Fifth, we discuss whether there was sufficient evidence to support the conspiracy convictions of Rodriguez and Caos. Sixth, we discuss whether the district court abused its discretion when it denied Caos's motion for a new trial based on newly discovered evidence. Seventh, we discuss whether the district court clearly erred when it sentenced Hernandez and Rodriguez.

### A. The District Court Did Not Abuse Its Discretion When It Refused to Accept Hernandez's Untimely Guilty Plea.

Hernandez argues that the district court abused its discretion when it refused to accept her guilty plea, but we disagree. Hernandez's guilty plea was untimely

6

because she proffered it more than two weeks after the court-imposed deadline, and we have held that "courts may reject guilty pleas that are tendered after a deadline set by the court." United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir. 1999).

*B. Hernandez Failed to Develop a Record for Her Argument of Ineffective Assistance of Counsel.*

Hernandez argues that she received ineffective assistance of counsel because during opening statements her lawyer conceded that she received kickbacks. "We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." Bender, 290 F.3d at 1284. This issue should be raised on collateral review.

*C. The District Court Did Not Abuse Its Discretion In Admitting Evidence.*

Rodriguez, Jimenez, and Caos contend that the district court abused its discretion on three occasions when it admitted certain evidence. First, Rodriguez argues that the district court abused its discretion when it allowed one of the pharmacy owners, Henry Gonzalez, to testify as a government witness about a purported phone conversation between his wife, Karla, and Rodriguez. Second, Rodriguez and Jimenez contend that the district court abused its discretion when it admitted evidence about Rodriguez and Jimenez's involvement with companies

7

that were not included in the indictment.  Third, Caos argues that the district court abused its discretion when it admitted testimony from Dr. Cuni about his and Caos's involvement in the scheme.  These arguments fail.

### 1. The District Court Did Not Abuse Its Discretion When It Admitted Gonzalez's Testimony About His Wife's Conversation with Rodriguez.

Rodriguez argues that the district court abused its discretion when it allowed Gonzalez to testify about an alleged phone conversation between his wife and Rodriguez.  Gonzalez testified that his wife told him she received a call from someone who identified herself as "Maivi," which is Rodriguez's first name, and who complained in a "caustic" and "abrasive" manner about a drop in the amount of kickbacks she was receiving.  Rodriguez argues that the government failed to lay a foundation to admit this evidence under Federal Rule of Evidence 801(d)(2)(E), that the evidence should have been barred by Federal Rule of Evidence 805 as hearsay within hearsay, and that the government did not properly authenticate this testimony under Federal Rule of Evidence 901.  We disagree.

The government laid a proper foundation to admit Gonzalez's testimony about the telephone conversation, which included both the admission of a party opponent under Rule 801(d)(2)(A) and the nonhearsay statement of a coconspirator under Rule 801(d)(2)(E).  "To lay a foundation for the admission of a coconspirator's statement, 'the government must establish by a preponderance of

8

the evidence: (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy.'" United States v. Schlei, 122 F.3d 944, 980 (11th Cir. 1997) (quoting United States v. Van Hemelryck, 945 F.2d 1493, 1497–98 (11th Cir. 1991)). The government satisfied these requirements when it presented evidence that a conspiracy existed; that Rodriguez, Gonzalez, and Gonzalez's wife were members of that conspiracy; and that Rodriguez made the statement during the course and in furtherance of the conspiracy. **[R:16:387:177–87].** Rodriguez's statement to Karla is an admission by a party opponent, Fed. R. Evid. 801(d)(2)(A), and Karla's statement to Gonzalez is a statement by a coconspirator of a party made during the course and in furtherance of the conspiracy, Fed. R. Evid. 801(d)(2)(E).

The district court also acted within its discretion when it concluded that circumstantial evidence, coupled with Rodriguez's self identification, authenticated the telephone conversation sufficiently to satisfy Federal Rule of Evidence 901, which provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Persuasive circumstantial evidence, including testimony that the caller

identified herself as "Maivi" and disclosed Rodriguez's group numbers, patient names, and pay periods, supports the determination that the call was authentic. See United States v. Pool, 660 F.2d 547, 560 (5th Cir. Unit B Nov. 1981).

2. The District Court Did Not Abuse Its Discretion When It Admitted Evidence Regarding A&A Home Health Care and M&M Assisted Living Facility.

Rodriguez and Jimenez argue that the district court abused its discretion when it admitted evidence about two home healthcare agencies that they managed, A&A Home Health Care and M&M Assisted Living Facility. This evidence included several billing records that established that these agencies, the durable medical equipment companies, and the pharmacies all billed Medicare for several of the same patients, and testimony from a witness involved with the agencies who has since admitted to Medicare fraud. The district court instructed the jury that there were no allegations that these agencies submitted fraudulent claims to Medicare. Rodriguez and Jimenez argue that the district court abused its discretion when it admitted evidence about these companies because the admission violated of Federal Rules of Evidence 402, 403, and 404(b).

The district court did not abuse its discretion. When considering a challenge under Rule 403, we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Elkins, 885 F.2d 775, 784 (11th Cir. 1989). This evidence was

10

relevant and had probative value under Rules 401 and 403 because it related to how the scheme worked and tended to prove Rodriguez and Jimenez had a degree of control over patient beneficiaries. The district court also did not abuse its discretion when it allowed the jury to consider the evidence for "other purposes" under Rule 404(b).

### 3. The District Court Did Not Abuse Its Discretion When It Admitted Testimony Against Caos by Others Involved in the Scheme.

Caos argues that she deserves a new trial because the district court abused its discretion when it admitted testimony from Dr. Cuni and Mrs. Palacios about their involvement in the scheme. It does not appear from the record that Caos objected to this testimony, and when a party fails to object to testimony at trial, "'[w]e correct only for errors that are particularly egregious and that "seriously affect the fairness, integrity or public reputation of judicial proceedings," and then only when a miscarriage of justice would result.'" United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) (alteration in original) (quoting Williford, 764 F.2d at 1502).

Caos cannot satisfy this demanding standard. Cuni's testimony had significant probative value in establishing that Caos knowingly participated in the scheme. According to Cuni, Hernandez stated that Caos would take Cuni's place and write prescriptions for the scheme when Cuni left for a medical procedure. Cuni also testified that he had patients in common with Caos and that Caos

11

eventually assisted some of his patients in the scheme. Palacios's testimony also had probative value because it related to how the scheme worked. There was no miscarriage of justice.

*D. The Discovery Violation Did Not Cause Jimenez Substantial Prejudice.*

Jimenez argues that the government caused her undue prejudice and committed prosecutorial misconduct when it violated a discovery obligation, but we disagree. The government violated a discovery order that required it to "state whether defendant(s) was/were identified in any lineup, showup, photospread or similar identification proceeding, and produce any pictures utilized or resulting therefrom." Henry Gonzalez testified, as a government witness, that he had positively identified Jimenez during a photograph examination in April 2007 and had identified Jimenez again in a photograph examination weeks before the trial. The government did not disclose these identifications to Jimenez before trial. The district court instructed the jury to disregard those portions of Gonzalez's testimony. "A discovery violation under . . . a standing discovery order is reversible error only when it violates a defendant's substantial rights." United States v. Camargo-Vergara, 57 F.3d 993, 998 (11th Cir. 1995). This discovery violation did not violate Jimenez's substantial rights because the district court struck the contested portions of Gonzalez's testimony and instructed the jury to

12

disregard them. "When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse only if the evidence 'is so highly prejudicial as to be incurable by the trial court's admonition.'" United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994) (quoting United States v. Funt, 896 F.2d 1288, 1295 (11th Cir. 1990)). Jimenez also cannot establish that she warrants a new trial based on prosecutorial misconduct, which "'is an extreme sanction which should be infrequently utilized.'" United States v. Accetturo, 858 F.2d 679, 681 (11th Cir. 1988) (quoting United States v. Pabian, 704 F.2d 1533, 1536 (11th Cir. 1983)).

*E. The Government Presented Sufficient Evidence to Convict Rodriguez and Caos.*

Rodriguez contends that the government failed to present sufficient evidence to convict her of conspiracy to engage in health care fraud and conspiracy to defraud the United States to receive kickbacks, but we disagree. The government offered sufficient evidence to allow a rational trier of fact to find Rodriguez guilty of these conspiracies. The government presented myriad documents from Henry Gonzalez that were replete with references to Rodriguez, including prescription logs with Rodriguez's group numbers; account logs that contained Rodriguez's name, cellular phone number, and group number; and a document that listed Rodriguez as one of a group of "[c]lients that still [have] not pick[ed] up the

13

envelopes." Government witnesses also testified that Rodriguez picked up payment envelopes three or four times from a pharmacy involved in the scheme, pharmacy managers called Rodriguez to discuss kickback payments, and Rodriguez and Hernandez sometimes picked up payment envelopes together. This evidence, viewed in the light most favorable to the government, supports Rodriguez's convictions.

Caos also contends that the government failed to present sufficient evidence to support her conspiracy convictions, and that she did not "knowingly and willfully participate[] in the larger, unified single conspiracy charged in the indictment," see United States v. Chandler, 388 F.3d 796, 811–13 (11th Cir. 2004). She argues that there is a variance between the conspiracies charged in the indictment and the evidence introduced at trial and that, at most, she may have participated in narrow kickback arrangements with owners of durable medical equipment companies, known as "hub and spoke" or "rimless wheel" conspiracies. "[T]o prove a single, unified conspiracy as opposed to a series of smaller, uncoordinated conspiracies, the government must show an interdependence among the alleged co-conspirators." Chandler, 388 F.3d at 811. "While each defendant must have joined the conspiracy intentionally, each need not be privy to all the details of the conspiracy or be aware of all the other conspirators." United States

14

v. Dorsey, 819 F.2d 1055, 1059 (11th Cir. 1987).

The government presented sufficient evidence for a rational trier of fact to find that there was an interdependence among Caos and the other coconspirators. Caos prescribed medications that were later brought to the pharmacies by owners of durable medical equipment companies. Henry Gonzalez testified that five owners of durable medical equipment companies—Pascual, Valdes, Hernandez, Jimenez, and Smith—all obtained prescriptions from Ana Caos for their patients, and Pascual testified that he personally took patients to Caos's office, gave Caos a list of medications that he wanted her to prescribe, and paid Caos $100 for each prescription she wrote. Caos prescribed the same medications used in the scheme to seven different patients on the same day, and sought reimbursements from Medicare for patient visits. Caos need not have been "privy to all the details of the conspiracy or be[en] aware of all the other conspirators" to sustain her convictions. Id. Instead, "[i]f there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, then those performing the functions are engaged in one conspiracy." Chandler, 388 F.3d at 811. The jury reasonably found that Caos was guilty of being a member of these conspiracies.

*F. The District Court Did Not Abuse Its Discretion When It Denied*
*Caos's Motion for a New Trial.*

Caos argues that the district court abused its discretion when it denied her motion for a new trial and refused to conduct an evidentiary hearing after newly discovered evidence established that Orlando Pascual, a witness for the government, was suspected of wrongdoing in another Medicare fraud investigation. Pascual testified that he was serving a prison term of 46 months for Medicare fraud, that he had entered into an agreement to cooperate truthfully with the government, but the government had made no promises in exchange for his cooperation, and that he had "always cooperated fully and honestly with" the government and that "every time [he had] been questioned by them, [he] told them the whole truth." Caos argues that the newly discovered evidence of Pascual's involvement in another Medicare fraud establishes that Pascual perjured himself at trial. Caos moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. The district court concluded that Caos failed to satisfy two requirements for a new trial under Rule 33 because the newly discovered evidence was merely cumulative and impeaching and because a new trial would not produce a different result, and denied the motion.

The district court did not abuse its discretion when it determined that Pascual's involvement in another Medicare fraud was cumulative and impeaching.

16

The government presented Pascual to the jury as a convict who serving a sentence of 46 months for Medicare fraud, and the district court instructed the jury to consider Pascual's testimony with more caution because he had entered an agreement with the government and "may have a reason to make a false statement." Caos contends that the newly discovered evidence was more than cumulative or impeaching because Pascual committed "undisputable perjury," but the district court was entitled to find otherwise. Caos fails to establish that Pascual was asked directly whether he was engaging in other criminal activities, and, as the district court found, "Pascual did not affirmatively state he had committed no other crimes . . . , nor did he or the government paint Pascual to be a reformed criminal."

The district court acted within its discretion when it determined that Caos failed to establish that a new trial would probably produce a different result because "there was ample other evidence, both testimonial and documentary, to support [Caos's] convictions." Apart from Pascual's testimony, the government introduced evidence that Caos wrote prescriptions for the drugs involved in the scheme that yielded high reimbursements, and that owners of durable medical equipment companies delivered prescriptions that Caos wrote to the pharmacies involved. Dr. Cuni, a government witness who admitted to his involvement in the scheme, testified that Hernandez had mentioned that Caos would replace Cuni in

17

the scheme when Cuni left for a medical procedure. The government also introduced evidence that Caos sought reimbursements from Medicare for patient visits and that the pharmacies, the owners of durable medical equipment companies, and Caos all billed Medicare for the same beneficiaries. This evidence supports as reasonable the determination of the district court that, even if the jury had known about Pascual's other criminal activities, it would not have reached a different result.

### G. The District Court Did Not Abuse Its Discretion When It Sentenced Hernandez and Rodriguez.

Rodriguez and Hernandez argue that the district court clearly erred when it determined their respective sentences. We address Rodriguez's and Hernandez's sentencing arguments in three parts. First, we address Rodriguez and Hernandez's argument that the district court erred when it imposed a four-level increase to their sentences for their roles as organizers or leaders of a criminal activity that involved five or more participants, U.S. Sentencing Guidelines Manual § 3B1.1(a) (2007). Second, we address Hernandez's contention that she merits a two-level reduction for acceptance of responsibility, id. § 3E1.1. Third, we address Hernandez's argument that the district court erred when it calculated the amount of loss attributable to her.

18

## 1. The District Court Did Not Err When It Enhanced Their Sentences for Their Roles as Organizers or Leaders.

Rodriguez and Hernandez contend that the district court erred when it imposed a four-level increase to their sentences for their roles as organizers or leader of criminal activity, but we disagree. A sentence may be enhanced by four levels under section 3B1.1(a) "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The government introduced evidence that Hernandez recruited and supervised 35 Medicare beneficiaries to participate in the scheme and paid Juan Molina for his fraudulent prescriptions. The government also introduced evidence that Rodriguez exercised control over patients at an assisted living facility who received medications involved in the scheme, and that one of Rodriguez's employees, Adela Pique, delivered cash payments to a patient under Rodriguez's supervision. The evidence also established that Rodriguez and Hernandez "claimed right to a larger share of the fruits of the crime," U.S.S.G. § 3B1.1(a) cmt. n.4, because they received 50 percent of the Medicare reimbursements for the prescriptions they sent to the pharmacies and kept 100 percent of the Medicare reimbursements for durable medical equipment. Rodriguez and Hernandez contend that the district court erred because it merely provided "one paragraph with no particulars" to support its decision to enhance

19

their sentences, but "[i]n making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings," United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

## 2. The District Court Did Not Err When It Denied Hernandez a Reduction for Acceptance of Responsibility.

Hernandez fails to establish that the district court clearly erred when it denied her a two-level reduction for acceptance of responsibility. "The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999). The district court concluded that Hernandez did not carry her burden because she merely "attempt[ed] to plead at the 11th hour and even then was not admitting responsibility in full for all of her conduct, and the position she has taken since has been one in which she has not acknowledged full responsibility for her actions in this case." We agree.

## 3. The District Court Did Not Err When It Calculated the Amount of Loss Attributable to Hernandez and Rodriguez.

Hernandez and Rodriguez challenge the calculation by the district court of the amount of loss attributable to them for sentencing purposes, but their challenge is without merit. "[A]lthough the district court must not speculate concerning the

20

existence of a fact which would permit a more severe sentence under the guidelines, its reasonable estimate of the intended loss will be upheld on appeal." United States v. Dominguez, 109 F.3d 675, 676 (11th Cir. 1997) (citation and internal quotation marks omitted). The district court based its calculation of loss on 80 percent of the amount allowed by Medicare for reimbursements attributable to Hernandez and Rodriguez, and concluded that Hernandez and Rodriguez were each responsible for a loss in the range of $200,000 to $400,000. Evidence presented at the hearing supports this calculation as reasonable, including the testimony of Hernandez and Rodriguez's own expert witness, who testified that Hernandez and Rodriguez had received "approximately 80 percent of the [amount] allowable" under the Medicare fee schedules. The calculation of loss by the district court also excluded charges outside of the conspiracy period, charges for equipment not related to the kinds of medications prescribed in the scheme, and charges associated with A&A Home Healthcare and M&M Assisted Living Facility. We conclude that the calculation of loss by the district court was reasonable.

## IV. CONCLUSION

We **AFFIRM** the judgments of convictions and sentences.